**LAFAYETTE PARK BAPTIST CHURCH, Appellant,**

v.

**BOARD OF ADJUSTMENT OF the CITY OF ST. LOUIS et al.,**
**Respondents.**

**No. 41816.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 29, 1980.

Albert E. Schoenbeck, Stephen M. Schoenbeck, St. Louis, for appellant.

Michael E. Hughes, Asst. City Counselor, Jack L. Koehr, City Counselor, St. Louis, for respondents.

WEIER, Judge.

Landowner, the Lafayette Park Baptist Church, brings this appeal to review a judgment of the circuit court sustaining the denial of its application for a permit to demolish a building. The building is a two and one-half story structure described as a "double entry town house." It sits on a town lot located at the southeast corner of Lafayette and Mississippi Avenues in the City of St. Louis and was acquired by the church for approximately $3600 at a foreclosure sale in September of 1973. The church acquired the property to convert it into a parking lot for use by members attending services and meetings, for additional recreation space and for use in conjunction with a day-care center. After purchase the church discovered the land and building was located within the boundaries of the Lafayette Square Historic District. It filed an application for a demolition permit to remove the building. Following a hearing before the Landmarks and Urban Design Commission of the city, the building commissioner denied the application for the permit. An appeal was then taken to the Board of Adjustment. This in turn resulted in an appeal from their unfavorable determination, first to the circuit court and then to this court. The facts as determined at that initial hearing and the law applicable to those facts are fully reported and discussed in *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856 (Mo.App.1977). We ruled favorably to the church on that appeal and directed that the case be reheard by the Board of Adjustment because the determination by the board was made without taking into account economic considerations of rehabilitation contrary to the standards established by the ordinance creating the historic district.

We now have before us the appeal from the adverse findings and determination by the Board of Adjustment after the rehearing and as such it is a sequent to *Lafayette Park Baptist Church v. Scott, supra*. For the sake of judicial economy, we will not recite all of the facts and the legislative acts which form the background to this litigation. This has previously been done in exact detail in the above-referenced case. We will confine ourselves to the contentions of appellant on this second appeal and the reasons we feel are determinative in its disposition.

In the first appeal we decided that the Board of Adjustment had applied standards improperly in determining whether a per-

mit should have been granted to demolish the building in that the board had considered the feasibility of restoration solely from a technological standpoint and did not consider economic factors of rehabilitation. This was based upon the contention by the church on that appeal that the standards established by the historic district ordinances were applied in an unconstitutional manner to the property rights involved. There was no attack at that time on the constitutionality of the ordinances themselves.

■ Now the church attacks the ordinances as being unconstitutional per se because they did not contain standards for demolition placed therein by the legislative body of the municipality. The thrust of this argument is directed principally toward Ordinance 56248, which established the Lafayette Square Historic District. This ordinance refers to standards set out in the development plan for Lafayette Square Historic District and the development plan in turn incorporates by reference portions of a document known as the "Lafayette Square Restoration Plan." In its attack upon this ordinance, the church relies for support upon the case of *Fairmont Inv. Co., Inc. v. Woermann*, 357 Mo. 625, 210 S.W.2d 26, 31 (1948) wherein it was stated: "The courts uniformly hold that proper restrictions upon the exercise of a police power are that such power be reasonably exercised, that it be certain, that it have uniformity of application in accordance with some standard contained within the ordinance itself, placed there by the legislative body of the municipality." Reliance is particularly placed upon the literal meaning of the words to the effect that the standard must be contained "within the ordinance itself." The church points out that instead of being within the ordinance the standards here applicable are incorporated by double reference to another instrument.

■ Although the use of incorporation by reference in a legislative enactment has been attacked before, it is recognized to constitute a valid method of legislation. *General Installation Company v. University*

*City*, 379 S.W.2d 601, 604[5] (Mo. banc 1964); *State ex rel. Cairo Bridge Commission v. Mitchell*, 352 Mo. 1136, 181 S.W.2d 496, 498–499 (banc 1944). Not only has the method been approved in the cases just cited but adoption by reference in a legislative ordinance has been frequently used in Missouri unchallenged as is shown by opinions of our appellate courts. For instance in *R. A. Vorhof Construction Company v. Black Jack Fire Protection District*, 454 S.W.2d 588, 593 (Mo.App.1970) it is noted that the Abridged Building Code, Fourth Edition 1965 and the Basic Building Code of the Building Officials Conference of America, Inc., Fourth Edition 1965 and supplements thereto and various standards published by the National Board of Fire Underwriters and the National Fire Protection Association were required by an ordinance to be deemed generally accepted good practices for construction and the rules and regulations of the two codes named and the National Fire Code were adopted to supplement the rules and regulations set forth in the ordinance and by reference were made a part of the rules and regulations of the district. In *General Installation Company v. University City, supra*, the city had incorporated by reference into an ordinance the terms and provisions of a statute of the State of Missouri dealing with the same general subject. *City of Warrensburg v. Board of Regents*, 562 S.W.2d 340 (Mo. banc 1978) dealt with the problem of a subsequent change in the statute which referred to the original statute in regard to certain exceptions on sales tax. The court held that the adopting statute took the statute to which it referred as it existed at the time of adoption and subsequent additions or modifications were not included.

Legislative reference may be seen in many statutes. It is a practice particularly common in describing the manner in which the power of eminent domain may be exercised. For example, the Urban Redevelopment Corporation is authorized to exercise that power in the manner provided for corporations in Chapter 523 by § 353.130, RSMo 1978. In § 227.120, RSMo 1978, the

State Highway Commission is authorized to exercise the right of eminent domain in accordance with the same chapter. Other reference statutes are too numerous to mention.

The historic district ordinance here in question made reference to a document that in turn referred to parts of another and they were both on public record. We do not believe that this method as used gives rise to a constitutional violation and so rule this point against the appellant-church.

The church next contends that the historic district ordinance denied it due process and equal protection of the law in violation of the United States Constitution, Amendments V and XIV, Section 1, and the Constitution of the State of Missouri, Article I, Sections 2 and 10. This is based upon the charge that the standards for demolition and the court's interpretation of the standards in the prior case, *Lafayette Park Baptist Church v. Scott, supra,* did not define the terms and therefore left the issuance of a permit to demolish up to the uncontrolled discretion of the city officials. The answer to this of course lies in the fact that this court in the first case and in a subsequent case of *Dempsey v. Boys' Club of the City of St. Louis, Inc.,* 558 S.W.2d 262 (Mo.App.1977) has interpreted the standards which, although loosely written, were fashioned by this interpretation into a cohesive and understandable set of rules. Specifically by judicial interpretation in *Lafayette Park Baptist Church v. Scott, supra,* the words "degenerated beyond feasible limits for rehabilitation" has been interpreted to authorize demolition when the conditions of the structure are such that the economics of restoration preclude the landowner from making any reasonable economic use of the property if restored, or the restoration is infeasible from a technical or mechanical standpoint. In *Dempsey v. Boys' Club of the City of St. Louis, Inc., supra,* the term "rehabilitation impracticable" as used in the ordinance enacted by the city to preserve the Soulard Historic District was interpreted to mean infeasibility of restoration not only because

of physical condition but also inability to turn the property to use or account profitably. In both opinions, this court adopted or referred with favor to the reasoning generally applied in historic district demolition cases to the effect the landowner must not only establish that he cannot economically utilize the property but that it is impractical to sell or lease it, or that no market exists for it at a reasonable price. *Lafayette Park, supra* at 863[23]; *Dempsey, supra* at 266–267[3].

The third charge of error on the part of the trial court is directed toward its holding that the historic district ordinances were constitutional as applied to the Lafayette Park Baptist Church on the asserted basis that the restriction imposed on the church by the application of the ordinances far outweighed any possible benefit to the public health, safety, morals or general welfare. In explaining its position, the church points out that a zoning ordinance may be valid in its general aspects and yet it may be clearly arbitrary and unreasonable when it is applied to a particular state of facts, and as a result is unenforceable with respect to a particular property. It relies upon the case of *Huttig v. City of Richmond Heights,* 372 S.W.2d 833 (Mo.1963) wherein it was held that the application of a zoning ordinance of the City of Richmond Heights which required the maintenance of residential zoning in regard to a tract of land surrounded by commercial development was an arbitrary and unreasonable restriction so as to infringe upon the rights of the owner under the due process clauses of both the Federal and State Constitutions. U.S. Constitution, Amendment XIV, Section 1; Missouri Constitution, Article I, Section 10. In *Huttig* the court determined that the maintenance of residential zoning as to the one tract of land while at the same time all other tracts adjacent to or near it and facing upon the same street were zoned commercial, was such an arbitrary and unreasonable restriction as to infringe upon the rights of the owners under these clauses. *Huttig,* however, was based upon the facts that were presented in that particular case. We do not have a factual situation here where

adjacent lots are outside of the historic district. In fact, the contrary is indicated by the evidence. The building in question was designated to have some architectural significance in that it was of the same age and style of architecture as the other structures in the same area.

■ An historic district ordinance is essentially a zoning ordinance. *Lafayette Park Baptist Church v. Scott, supra,* 553 S.W.2d at 861[2]. As a zoning ordinance it is subject to the same historic tests established by our courts. Whether the enforcement of such an ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional depends in each instance upon the evidence and the facts and circumstances of each case. Initially it is the legislative body which has the duty to determine the classification for a particular area. Unless this appears to be arbitrary and unreasonable the court cannot substitute its opinion for the determination by the legislative body. Where this action is fairly debatable, the court cannot and will not substitute its opinion. Such an enactment is presumably valid and anyone who challenges the reasonableness of the ordinance as applied to a specific property has the burden of proving unreasonableness. *Vatterott v. City of Florissant,* 462 S.W.2d 711, 713 (Mo.1971). *Huttig* must be read in light of the well-established law in Missouri in this area and it bases its decision upon the undisputed facts presented to the court in that case. *See Tealin Company v. City of Ladue,* 541 S.W.2d 544, 548–550 (Mo. banc 1976). In *Lafayette Park Baptist Church v. Scott, supra* at 861, we have previously held that the purpose of the Lafayette Square Historic District Ordinance was to preserve and protect a neighborhood with a clearly identifiable history and culture which was in danger of decay, dilapidation and destruction on that the ordinance was "clearly in the best interests of the general welfare of the City of St. Louis." The ordinance as interpreted in *Lafayette Park, supra,* requires that structures having architectural significance be preserved when technologically and economically feasible. In order

for the landowner to raise the question of unconstitutional application as to his property, he must prove that it is impractical to rehabilitate, and as we have stated, this contemplates not only infeasibility because of physical condition but also a negative answer to the question as to whether the property can be turned to use or account profitably. *Dempsey v. Boys' Club of the City of St. Louis, Inc., supra,* 558 S.W.2d 262, 267[3]. Economic profitability contemplates restoration, and if not then the question arises: Can it be sold profitably? If the owner is unable to restore from an economic standpoint he must then establish it is impractical to sell or lease the property or that no market exists for it at a reasonable price. *Lafayette Park, supra* at 863[23]. Only then is he entitled to a demolition permit. And only then are his constitutional rights denied. The third contention is denied.

■ Finally, appellant-church contends that the court erred in holding there was competent and substantial evidence to support the findings of the Board of Adjustment. Substantial evidence must support the ruling of the Board of Adjustment on judicial review. *Rosedale-Skinker Improvement Assn. v. Board of Adjustment,* 425 S.W.2d 929, 937 (Mo. banc 1968); *Brown v. Board of Adjustment,* 469 S.W.2d 844, 847[1] (Mo.App.1971). To substantiate its charge, appellant-church maintains that the trial court erred in holding that there was substantial and competent evidence to support the board's findings that the building was structurally sound, that there existed a market for the property in its present condition, that it was economically feasible to rehabilitate the property, and that there was insufficient evidence of practical difficulties or unnecessary hardships to warrant the granting of a variance. This attempts in effect to have us review the case in a different perspective than we are obliged to do. The church was the applicant for the permit to demolish the building. Being the moving party, it had the burden of proof. As stated with respect to the obligation of the moving party in *Dempsey, supra* at 267:

"Boys' Club, Inc. is not entitled to a permit to demolish these buildings without making such a showing." The showing referred to there would be substantial evidence that it would be uneconomic to restore and rehabilitate the buildings and that the property could not be turned to account profitably, that is, sell or lease it. Here, the evidence adduced by the church could be construed to substantiate its claim that it was uneconomic to either restore or rehabilitate the building. Mr. L. E. Spotswood, their architect and engineer, testified that the building could be rehabilitated at a cost of $191,-600. This fact was disputed by some of the witnesses by the city, particularly Aaron Kram, a structural engineer, who testified that in his opinion the building was structurally sound and could be rehabilitated but did not have any estimate as to the cost and witness Guy McClellan, a member of a contracting firm that had been working in the Soulard Historic District, a district adjacent to the Lafayette Park District, for a period of two years. During this time McClellan had bought, renovated and rented three- and four-family apartment buildings. Based on his inspection and computation, the cost of restoration would be approximately $155,000. After restoration, he was of the opinion that the building would have a gross rental income of $18,000; and after deducting payment of maintenance cost, taxes, insurance and debt service, there would remain a return to the investor of approximately 8 percent on the owner's equity. The church advanced no evidence with regard to impossibility of a sale of the property. The city although not required to do so did produce a witness who testified that the property without restoration in its present state was worth $5,000 to $7,000. The chairman of the board of trustees at the time the building was purchased testified that the property was acquired for the total sum of $3,666.02. It was purchased for the purpose of having additional parking space, playground space and a day-care center. No improvements had been added. In regard to whether the church would sell the property if it could make a profit, the witness stated that the church did not purchase it to sell; that it was not in the real estate business.

The church has failed to carry its burden of proof that it cannot economically utilize the property or that it is impracticable to sell, lease it or in any way obtain a reasonable return from it or that no market exists for this type of property at a reasonable price. On the contrary, the city has supplied some testimony that the property was of a value in excess of the amount expended by the church to acquire title. The application of the church for the demolition permit was not supported by competent and substantial evidence. Further, substantial evidence supported the findings of the Board of Adjustment on disputed matters.

The judgment of the circuit court is affirmed.

STEWART, P. J., and CRIST, J., concur.