Arthur Salvatore et al., Appellants, v City of Schenectady, Respondent. (And Another Related Proceeding.)

Third Department, June 30, 1988

APPEARANCES OF COUNSEL

*Nicholas D. Morsillo* for appellants.

*Alfred L. Goldberger, Corporation Counsel (William W. Oliver of counsel),* for respondent.

*Richard W. Brown* for Realty Plot Association of City of Schenectady et al., *amici curiae.*

## OPINION OF THE COURT

LEVINE, J.

Arthur and Patricia Salvatore reside in a dwelling on a two-acre tract on Lowell Road in the City of Schenectady. Their property is situated within an area known as the General Electric Realty Plot which is designated as an "A-2 Historic Residential District" in the city's zoning ordinance (City of Schenectady Code of Ordinances, art VIII, ch 264) (hereinafter Zoning Ordinance). The Salvatores began construction of a large above-ground swimming pool and deck at the rear of their house in the spring of 1986. However, construction was halted by order of the city's Building Inspector on the ground that a building permit was required. The Salvatores promptly submitted an application for the permit, which was then referred to the city's Historic District Commission, whose approval was required under section 264-43 of the Zoning Ordinance. On September 25, 1986, the Commission issued a certificate disapproving the application, but recommending that the Salvatores submit a design by a professional architect "compatible with the character of the G.E. Realty Plot and

the existing house design, and thereby favorable to the Commission".

The Salvatores appealed the Commission's decision to the city's Board of Zoning Appeals which, on December 16, 1986, upheld the decision and instructed them to resubmit an appropriate new design or dismantle the pool and deck within 30 days. Initially, the Salvatores commenced a CPLR article 78 proceeding to challenge the foregoing determination, but this proceeding was withdrawn and, on January 14, 1987, under covering letter from their attorney, they submitted an architect's concept and design drawings to the Commission. A hearing on this submission was held by the Commission on February 2, 1987. On March 11, 1987, the Commission rendered a written decision approving the Salvatores' application, but conditioned upon their incorporating certain additional construction and landscaping changes in the plans, the most onerous of which was the requirement that 38 arborvitae trees, eight feet in height, be planted around the pool and deck. This decision was appealed to the Board of Zoning Appeals which, after a hearing, again upheld the Commission's decision. The Salvatores then commenced the instant action seeking a declaratory judgment that article VIII of the Zoning Ordinance is unconstitutionally vague, and the instant CPLR article 78 proceeding otherwise challenging the administrative determination which only conditionally approved their application. Supreme Court ruled adversely to the Salvatores and dismissed both the complaint and their petition in a single decision and order. This appeal ensued.

The rejection of the Salvatores' constitutional challenge to the Zoning Ordinance should be affirmed. A municipality may validly impose historic district regulations designed to maintain the esthetic or cultural character of an area *(see, Penn Cent. Transp. Co. v City of New York,* 42 NY2d 324, 330, *affd* 438 US 104). A statute withstands an attack for vagueness if it contains sufficient standards to afford a reasonable degree of certainty so that a person of ordinary intelligence is not forced to guess at its meaning *(see, Foss v City of Rochester,* 65 NY2d 247, 253), and to safeguard against arbitrary enforcement *(see, Wegman's Food Mkts. v State of New York,* 76 AD2d 95, 101). The Zoning Ordinance meets these requirements.

Most notably for the Salvatores' application, the Zoning Ordinance's standards and criteria provide that the Commission is to consider, *inter alia,* the "historic, cultural or archi-

tectural value and significance of any building or structure" (Zoning Ordinance § 264-43 [A] [1]), the "relationship of the proposed exterior design * * * to the historic value and architectural style and character of buildings and structures in the surrounding area" (Zoning Ordinance § 264-43 [A] [3]), the "relationship of the * * * structure to open spaces * * * located at and nearby the premises being considered" (Zoning Ordinance § 264-43 [A] [5]), that alterations and additions to existing buildings are to be made "consistent with the spirit of their architectural style * * * compatible with the size, scale, material and character of the property, neighborhood or environment" (Zoning Ordinance § 264-44 [A] [1]), that "[n]ew construction shall be consistent with the architectural styles of historic value" (Zoning Ordinance § 264-44 [B]), and that the "distinguishing original qualities * * * of any significant building, structure or site and its environment shall not be destroyed" (Zoning Ordinance § 264-44 [D] [1]). The foregoing standards, which generally require compatibility of any new construction or alteration with existing structures of historic or architectural value on or nearby the property on which construction is proposed and with the environment of open spaces in the surrounding neighborhood, are sufficiently precise and objectively verifiable to give fair notice and provide minimal guidelines to safeguard against arbitrary or discriminatory enforcement, and are clearly consistent with the legitimate legislative purposes of historic district regulation *(see, Maher v City of New Orleans,* 516 F2d 1051, 1062-1063, *cert denied* 426 US 905; *Opinion of Justices to Senate,* 333 Mass 773, 128 NE2d 557; *see also Matter of Torsoe Bros. Constr. Corp. v Architecture & Community Appearance Bd. of Review,* 120 AD2d 738, 739).

Based upon the foregoing criteria contained in the Zoning Ordinance, the Commission could rationally conclude that the proposed pool and deck, massive in size and distinctly contemporary in appearance, would be incompatible with the esthetic, cultural and historic character of the Salvatores' property and surrounding area unless modified along the lines of the conditions the Commission imposed for approval. Moreover, the Commission reasonably interpreted the definition of "structure" in article II, section 264-2 of the Zoning Ordinance to include the installation of the pool and deck. Therefore, Supreme Court correctly dismissed the Salvatores' action for a declaratory judgment.

■ Despite the propriety of the Commission's efforts to

regulate the Salvatores' project under the valid local historic district legislation, the Salvatores were entitled to annulment of the determination of the Board of Zoning Appeals in their CPLR article 78 proceeding. It is uncontradicted that the Salvatores submitted a revised plan for the deck and pool on January 14, 1987 in compliance with the directions contained in the Commission's earlier certificate of disapproval and with the decision of the Board of Zoning Appeals upholding disapproval. The Commission's written decision in response to their resubmission was not rendered until March 11, 1987. Section 264-45 of the Zoning Ordinance provides a specific timetable for Commission review of plans for construction contained in an application for a permit to build within an historic district. Under section 264-45 (C) (3) of the Zoning Ordinance, the failure of the Commission "to approve or disapprove of such plans within forty-five (45) days from the date of application * * * shall be deemed to constitute approval, and the Building Inspector shall proceed to process the application without regard to a certificate of approval". None of the exceptions to the deadline set forth in that section are applicable. Similar provisions in both State and local zoning legislation have been held to be self-executing and mandatory *(see, Matter of Town of Smithtown v Howell,* 31 NY2d 365, 378; *Wallberg v Planning Bd.,* 115 AD2d 539; *Matter of Pekar v Town of Veteran Planning Bd.,* 58 AD2d 703, 704).

The city attempts in two ways to circumvent the effect of the apparent untimeliness in the Commission's action on the Salvatores' application. First, it is argued that the Salvatores actually only submitted one formal application for a permit, which the Commission acted upon by its certificate of disapproval in September 1986, and that the time constraints in the Zoning Ordinance do not apply to any subsequent informal submission of revised plans. However, the Commission invited a resubmission in its initial certificate of disapproval and, in fact, entertained it and acted upon it. Therefore, the Salvatores' January 14, 1987 submission of revised plans was either the final completion of their original application or constituted a new application by them which the Commission accepted and determined as such, regardless of the Salvatores' noncompliance with the technical formalities required for such an application. In either case, the ordinance provides no basis for dispensing with the time deadline for the Commission's approval or disapproval.

Alternatively, the city argues that the Commission actually

acted on the resubmission, by reaching agreement upon the conditional approval of the Salvatores' revised plans, in a session immediately following the Commission's hearing on the resubmission on February 2, 1987. This contention, however, is belied by the statement of the Chairman of the Commission at the meeting of the Board of Zoning Appeals on the Salvatores' appeal from the Commission's decision dated March 11, 1987, which reflects that a formal vote adopting that decision in its final form was not taken until the Commission's regularly scheduled meeting of March 9, 1987. Accordingly, the Commission's untimeliness in deciding the Salvatores' application must be given effect and deemed to constitute approval, as provided in the ordinance.

MAHONEY, P. J., CASEY, WEISS and MERCURE, JJ., concur.

Judgment modified, on the law, without costs, by reversing so much thereof as dismissed petitioners' CPLR article 78 application; determination annulled, petition granted and the Building Inspector of the City of Schenectady directed to process petitioners' application for a building permit without regard to a certificate of approval from the city's Historic District Commission; and, as so modified, affirmed.