**U–HAUL COMPANY OF EASTERN MISSOURI, INC., Appellant,**

v.

**The CITY OF ST. LOUIS and the Heritage and Urban Design Commission, Respondents.**

No. 62362.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 25, 1993.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied June 23, 1993.

James M. Martin, Heidi L. Leopold, Martin & Malec, St. Louis, for appellant.

James J. Wilson, City Counselor, Michael A. Garvin, Asst. City Counselor, St. Louis, for respondents.

SMITH, Judge.

U–Haul appeals the judgment of the trial court which upheld the holding of the Heritage and Urban Design Commission of St. Louis City (hereinafter Heritage Commission or Commission) that U–Haul could not cover approximately 45% of a building owned by it with metal siding. We reverse.

The building in question is used by U–Haul as a warehouse in which its customers may lease space for the storage of property. The building is located near Kingshighway Boulevard and I–44 in the northwest quadrant of the intersection. The building was designed by Harris Armstrong, a prominent St. Louis architect, and built in 1947 for the American Stove Company, for use as an office and display facility for Magic Chef stoves. It was subsequently acquired by the Teamster's Union and used for a health care facility. The Union subsequently relocated its facility to Grand Avenue. The building remained unoccupied for approximately ten years and sustained severe vandalism damage and general deterioration. It was acquired by U–Haul in 1977. U–Haul paid $96,000 in back taxes. The record is not clear as to the total cost to U–Haul of acquiring and refurbishing the building for its present use, but the amount was clearly in excess of $700,000. Under the City's building codes then in effect and still in effect the building could not and cannot be utilized for office purposes without substantial and uneconomic additional expense of adding fire exits and stairwells. In refurbishing the building U–Haul installed a sprinkler system, fireproofing, and rebuilt the elevators in addition to other repairs.

From the beginning U–Haul had difficulty with water leakage between the aluminum frames and the windows. Attempts were made to caulk from the inside of the building but such attempts did not solve the problem for more than short periods of time. U–Haul provided evidence that caulking the building from the outside would cost $118,000 and would be effective for 4 to 8 years when the process would have to be repeated. Much of this expense would arise from the necessity of inventorying and moving customers possessions from one location to another and then back as the caulking progressed. U–Haul also obtained an estimate for another method which would provide water protection for $300,000. Replacing glass with the existing frames would cost between $350,000 and $400,000 and was not seriously considered by U–Haul. It opted instead for metal panels to cover the two walls (north and south) containing the windows at a cost of $97,000. The siding color closely matches other parts of the building. The windows have considerable calcification which can be observed from some distance and which is unsightly. Tenants' property stored in the facility can also be seen from outside the building. U–Haul chose the siding approach to solve two problems, leakage and unsightliness of the windows.

Work was commenced and then stopped pursuant to a Stop Order issued by the Building Commissioner. Application was then made for a building permit. This request was referred by the Building Commissioner to the Heritage Commission pursuant to the mandate of the city ordinances. The Heritage Commissioner recommended denial of the permit which recommendation was followed by the Building Commissioner as was required by the ordinances. Appeal from that decision was taken to the Heritage and Urban Design Commission as provided by the ordinance.[1]

1. The ordinance requires the Building Commissioner to refer the building permit request to the Commission. If the Commission recommends denial of the permit the Building Commissioner must deny the permit. Appeal of that denial is to the Commission. Appeal of that appeal is to the Circuit Court. In effect the administrative tribunal required to review the decision of the Commission is the Commission. The ordinance also provides for a Heritage Commissioner who can also make the initial determination so it is probable that in most instances the review by

Following a hearing the Commission affirmed the decision of the Building Commissioner. Review in the Circuit Court followed and then this appeal to this court.

The Heritage Commission was created by Ordinance 57986 in February 1980 which ordinance comprises Chapter 895 through 898 of the city ordinances. It provides for designation of historic districts and landmarks and landmark sites. The property involved here is not in an historic district nor is it a designated landmark or landmark site. Section 897.020 provides that the building commissioner shall not issue a building permit for any construction, alteration or demolition of any exterior architectural feature unless the building complies with the Minimum Exterior Appearance Standards. If the alteration is not covered by an applicable Minimum Exterior Appearance Standard the application for building permit is to be forwarded to the Heritage Commission for approval. The alteration proposed here was not covered by an applicable Minimum Exterior Appearance Standard. The ordinance then establishes in that situation the following Minimum Exterior Appearance Standard:

> The proposed construction, alteration or demolition will be of such external appearance, design or nature as to be generally compatible with the style and design of surrounding improvements and conducive to the proper architectural development of the community and shall not constitute an unsightly, grotesque or unsuitable structure in appearance, detrimental to the welfare of the surrounding property or residents.

The Commission held a hearing and issued a letter to the Building Commissioner upholding the prior denial. The letter contained findings of fact and conclusions of law although not always properly identified. The Commission found the building to be located on a major thoroughfare on a rise directly adjacent to Interstate 44 and surrounded by low-rise commercial and residential development. Its prominent position makes it visible for several miles in all directions "and alterations would impact

the environment far beyond adjacent buildings". In a "conclusion of law" the Commission found "[t]he proposed siding will create a design which is not compatible with the style and design of surrounding improvements and which is not conducive to the proper architectural development of the community. The proposed siding would also constitute an unsightly, grotesque or unsuitable structure in appearance, detrimental to the welfare of the surrounding property and residents."

U–Haul raises five points on appeal. The first challenges the jurisdiction of the Commission to prevent the construction of the aluminum siding on the building. The second contends the ordinance is so clearly arbitrary and unreasonable as to be unconstitutional and unenforceable. The third challenges the decision of the Commission on the basis that it was not supported by competent evidence. The fourth contends the decision was arbitrary and capricious in the application of the exterior standards to appellant. Finally, it contends the ordinance impermissibly delegates legislative authority to the Commission.

■ U–Haul's first contention is without merit. U–Haul sought a building permit and by so doing submitted to the jurisdiction of the Building Commissioner and, pursuant to the ordinance, also to the Commission. It cannot now contend that the absence of the building permit ordinance in the record before the Commission causes the jurisdiction of the Commission to fail. We can assume that U–Haul's act of seeking a permit was based upon a legal requirement that it obtain such a permit before adding the siding.

■ U–Haul's second point is based upon the concept that the ordinance is void for vagueness in its listing of the "minimum exterior appearance standards". The "void for vagueness" constitutional attack arises from the requirements of due process of both the United States and Missouri constitutions. *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52 (Mo.App.1990) [1]. Due process requires laws to provide (1) notice to the ordinary person of what

the Commission is actually from the denial by the Heritage Commissioner.

conduct is proscribed so he may act accordingly and (2) standards to those enforcing laws so as to prevent arbitrary and discriminatory enforcement. *City of Festus v. Werner*, 656 S.W.2d 286 (Mo.App.1983) [1]; *Fitzgerald, supra.* Due process will tolerate more vagueness in the context of noncriminal laws because the consequences of such imprecision are "qualitatively less severe". *Fitzgerald, supra at [2] (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371 (1982)). It is constitutional for language which reasonable people understand to require interpretation on a case-by-case basis. *Id.* An ordinance is presumptively constitutional unless it "clearly and undoubtedly" violates a constitutional provision. Unless, therefore, the ordinance "clearly and undoubtedly" is void for vagueness it is not unconstitutional. *K–Mart Corp. v. St. Louis County*, 672 S.W.2d 127 (Mo.App. 1984) [5–7].

■ While the ordinance before us is considerably less than a model of precision we do not find it to be unconstitutionally vague. It does require interpretation on a case by case basis by the Commission which consists of eleven members including experts in architecture, art or architectural history, landscape architecture or planning, structural or civil engineering, and real estate. While the standards are not precise they do focus on specific areas such as architectural development of the community, unattractiveness, compatibility with the neighborhood, and absence of detriment to the neighborhood. It would be "practically impossible and socially undesirable" for the city to list all minimum exterior standards. *Fitzgerald, supra at [3].* The minimum exterior standard provides flexibility needed to allow the Commission to assess each situation on a case by case basis but serves to advise the landowner of the minimums which must be met, and provides sufficient guidelines to preclude arbitrary enforcement. We do not find the ordinance unconstitutionally vague.[2]

■ We turn to U–Haul's third point, that the Commission decision was not supported by competent evidence. The Commission has approached this application as if the choice is the status quo or the proposal of U–Haul and it has opted for the status quo. No witnesses were presented by the City as to the feasibility of some alternative plan for preserving the building. Commission members, not subject to cross-examination, demonstrated in their questioning of U–Haul's witnesses, their allegedly expert evaluation of other methods which might be utilized to remedy the water leakage problem. The only *evidence* offered about the economic feasibility of other methods came from U–Haul's witnesses. The evidence° makes clear that some long-term solution to the water leakage problem is necessary for this building to be utilized effectively in the future. The condition of the windows and the use to which the building is being put mandate some corrective action to remove the admitted unsightliness. The Commission was required to approach the evidence in this case from the standpoint that some corrective action is required and whether the action proposed was contrary to the minimum standards imposed by the ordinance.

The record before the Commission does not support its findings that the building would be "unsightly, grotesque, or unsuitable in appearance, detrimental to the welfare of the surrounding property and residents." The record is clear that the building as it now stands is unsightly, in part because of the water leakage conditions which U–Haul desires to address and in part because it is a storage facility in which the vastly assorted stored items can be viewed through the windows which U–Haul desires to cover up with siding. The record does not demonstrate a basis for concluding, on other than a purely subjective basis, that the proposed structure is more unsightly, grotesque, or unsuitable in appearance than the present structure or surrounding structures. The Commission concluded that having a building covered with

2. This should not be interpreted by the Commission as authorizing subjective judgment of approval or disapproval of permit requests. The violation of the minimum standards must appear from the record before the Commission and comparable standards must be utilized consistently by the Commission.

siding without windows or fenestration would be unsightly. But the siding does have a design and the present fenestration is not noticeable from a distance. The windows are now unsightly and as long as the building is utilized as a warehouse will be. The structure is a warehouse and must be evaluated by the Commission as a warehouse and not as the office building it originally was but now cannot be.

There is also no support for the Commission finding that the proposed structure is not compatible with surrounding improvements. In the nearby area are numerous structures which are covered with siding at least one of which is owned by the city and is garish in appearance. The surrounding area includes railroad tracks, junk yards, industrial facilities and a hodge podge of structures. Nothing in the record establishes that the proposed structure will be materially out of keeping with the myriad of structures in the surrounding area. The Commission appears to have based its finding in this regard on the fact that the structure can be seen for several miles in any direction and therefore its sight lines determine the surrounding area to be considered. Even if this expansive view of "surrounding area" is permissible the record does not provide any indication in what respect the proposed structure is incompatible with that expanded area, except that the Heritage Commissioner believes it to be.

The record does establish that the building has architectural importance in that it was designed by a prominent St. Louis architect and is one of the first buildings in St. Louis designed in the international style as it was being defined in Europe at the time of construction. Preserving such a structure in its original appearance can qualify as "proper architectural development of the community". We have recognized in this state that there are limits "to which the owner of property may be compelled to bear the cost of improving the general welfare." *Lafayette Park Baptist Church v. Scott*, 553 S.W.2d 856 (Mo.App. 1977) [7–11]. Preservation of this structure in its present condition because of its architectural significance cannot be imposed on the owner at a cost so high as to make the property economically unusable or to prevent effective use or to result in its deterioration and demise. If the public weal demands preservation because of architectural significance irrespective of cost the power of eminent domain is available.

The Commission essentially held that U–Haul had not sufficiently explored other possible options available to it nor consulted with experts in waterproofing buildings to determine if other economically feasible alternatives are available. The record taken in the light most favorable to the Commission's decision, does not support the Commission's finding in this regard. *Central Bank of Clayton v. State Banking Board of Missouri*, 509 S.W.2d 175 (Mo. App.1974) [9]. The evidence presented by U–Haul disclosed extensive analysis and investigation by U–Haul of possible alternative measures to correct the problem, none of which were economically feasible. U–Haul presented expert testimony in support of its method of correcting the problems. The City offered no evidence of economically feasible alternatives, only the suggestions of members of the Commission unsupported by evidence and.not subject to cross-examination. A reading of the record makes it obvious that the Commission evaluated the architectural history of the building as overriding the owner's attempts to correct the admittedly existing problems. The denial of the permit is not supported by the record.

The Commission also rejected U–Haul's request for a sign on the building which would have been smaller and less obtrusive than the present signage and within the ordinance requirements. There was no basis for that decision established by the record.

Judgment is reversed and the Heritage and Design Commission is ordered to reverse the action of the Building Commissioner in denying the building permit.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.