645 So.2d 533 (1994)
ESTATE OF Mary Elizabeth Whitney TIPPETT, and Cloyce Tippett, Petitioners,
v.
CITY OF MIAMI, Florida, a Florida municipality, Respondent.
No. 94-126.
District Court of Appeal of Florida, Third District.
November 9, 1994.
Rehearing Denied December 14, 1994.
Baker & McKenzie and Anthony J. O'Donnell, Jr., John William Watson, III, Miami, for petitioners.
A. Quinn Jones, III, and Kathryn S. Pecko, Miami, for respondents.
Robert A. Ginsburg, County Atty., and Thomas W. Logue, Asst. County Atty., Holland & Knight and Samuel E. Poole, III, and Christopher N. Bellows, Miami, David A. Doheny and Elizabeth S. Merritt, Washington, DC, and Alexandra Acosta, Miami, for Nat. Trust for Historic Preservation in U.S. and the Florida Trust for Historic Preservation and Dade Heritage Trust, as amici curiae.
Before BASKIN, JORGENSON and GERSTEN, JJ.
PER CURIAM.
We deny landowners' petition for a writ of certiorari to quash the opinion of the Circuit Court, Appellate Division, affirming the City of Miami City Commission's Resolution denying the landowners' appeal from the creation of a Bayside Historic District ["District"]; the District encompasses petitioners' property. The Appellate Division correctly concluded that the petitioners' claim was premature.
Petitioners own the Prescott House located on NE 71st Street in northeast Miami. In 1991, the City of Miami Historic and Environmental Preservation Board[1] voted to designate *534 an area of northeast Miami encompassing the House as the Bayside Historic District. Petitioners appealed the designation to the City Commission. The Commission denied the appeal and affirmed the designation.[2] Petitioners then appealed the Resolution to the Circuit Court, Appellate Division, arguing that the designation of the property as historical amounted to an unlawful taking. The court affirmed the Commission's Resolution.
Petitioners present a facial challenge to the declaration of the District and to the ordinance under which it was created. However, petitioners have not sought to obtain any permits under the ordinance and the government entity charged with implementing the ordinance has not reached a final decision regarding the ordinance's application. Hence, landowners' attack on the District, as an unconstitutional taking, is not ripe for consideration. See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); Glisson v. Alachua County, 558 So.2d 1030 (Fla. 1st DCA), review denied, 570 So.2d 1304 (Fla. 1990).
Certiorari denied.
BASKIN and JORGENSON, JJ., concur.
GERSTEN, Judge, concurring.
I concur. While I agree with the majority that petitioners' takings claim is not ripe, I write separately because the field of historic preservation is a developing area of the law with significant ramifications for the public welfare.
The petitioners in this case have challenged the designation of the Bayside Historic District by the City of Miami's Historic and Environmental Preservation Board. In designating the district, the Preservation Board acted pursuant to its authority under Miami's Historic Preservation Ordinance, which was amended in 1991. §§ 23.1-1 to 23.1-6, Miami Code. The Historic Preservation Ordinance defines a historic district as "[a] geographically defined area possessing a significant concentration, linkage, or continuity of sites or structures united historically or aesthetically by plan or physical development." § 23.1-2, Miami Code.
Miami's amended ordinance now conforms to the minimum standards for preservation established by Dade County in chapter 16A of the Dade County Code, and follows a two-stage regulatory process. The first stage involves the evaluation, nomination, and designation of historic sites and districts by the Preservation Board, in accordance with specific criteria and procedures, including notice and public hearings. § 23.1-4, Miami Code. The members of the Board must possess special expertise, knowledge and interest in the fields of architecture and historic preservation. § 62-71(1), Miami Code.
The second stage of the regulatory process is triggered only if an owner wishes to alter or demolish a designated property or to undertake new construction within a historic district. In that case, the owner applies to the Preservation Board for a permit which must be issued in accordance with specific criteria in the ordinance. § 23.1-5(C), Miami Code. Any permit denial is subject to an appeal to the City Commission, and then to the Circuit Court. § 23.1-5(B)(4)(e), Miami Code. In any event, when an owner applies for a permit to demolish, the Board cannot deny the issuance of a demolition permit, but can delay issuance for up to six months. § 23.1-5(C)(2), Miami Code.
As a further safeguard, the ordinance establishes a procedure to grant exemptions based on economic hardship. Upon application and proof, a property owner is entitled to an exemption from any aspect of the permitting process that causes "unreasonable or undue economic hardship." § 23.1-5(B)(4)(b), Miami Code. The decision to deny such an exemption is also subject to an appeal to the City Commission and then the Circuit Court. § 23.1-5(B)(4)(e), Miami Code.
The Bayside Historical District was platted and built from 1909 to 1941. Most of the *535 homes date from that era and represent many of the main architectural themes in Miami. Early buildings in the district are constructed in the frame vernacular style; homes from the 1920's are built in Mediterranean revival; houses from the 1930's and 1940's are built in Art Deco, the Americanized term for Artes Decoratif. In addition, a significant number of homes were built in the Mission and Streamline Moderne styles. Buildings in the district utilize various indigenous materials, such as keystone and oolitic limestone. Many wrought iron screen doors and precast concrete vents exhibit South Florida motifs such as flamingos, palm trees, wave designs, sunbursts, and egrets.
Petitioners pose an array of constitutional challenges, none of which have merit, in my opinion. First, the designation of a historic district without the owner's consent does not constitute a taking. The landmark opinion, Penn Central Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), is dispositive on this issue. Penn Central upheld the constitutionality of New York City's historic preservation ordinance, even though the law prevented the property owner from constructing a 55-story office building over the historic Grand Central terminal. Id. at 131-39, 98 S.Ct. at 2662-67. The Court held that the denial of the request to develop the air rights above the terminal did not constitute a taking, that the ordinance did not interfere with the owner's investment-backed expectations, and that a takings claim may be stated only when the owner demonstrates that property has been left with no reasonable use. Id. at 123-39, 98 S.Ct. at 2659-67.
The Court opined that historic preservation legislative efforts were driven by two concerns:
The first is recognition that, in recent years, large numbers of historic structures, landmarks, and areas have been destroyed without adequate consideration of either the values represented therein or the possibility of preserving the destroyed properties for use in economically productive ways. The second is a widely shared belief that structures with special historic, cultural, or architectural significance enhance the quality of life for all. Not only do these buildings and their workmanship represent the lessons of the past and embody precious features of our heritage, they serve as examples of quality for today. Historic conservation is but one aspect of the much larger problem, basically an environmental one, of enhancing  or perhaps developing for the first time  the quality of life for people.
Id. 438 U.S. at 108, 98 S.Ct. at 2651 (citations and quotations omitted).
At the time the Court issued Penn Central, all 50 states and more than 500 municipalities had enacted preservation laws. Id. at 107, 98 S.Ct. at 2650-51. In 1992, local historic preservation ordinances numbered more than 1700. Christopher J. Duerksen, Historic Preservation Law, in 1 Ziegler, Rathkopf's The Law of Zoning and Planning § 15.01, at 15-4 (4th ed. 1994). Further, "in fifteen years since Penn Central, no other state has rejected the notion that no taking occurs when a state designates a building as historic." United Artists' Theater Circuit, Inc. v. City of Philadelphia, 535 Pa. 370, 635 A.2d 612, 619 (1993). See Bohannan v. City of San Diego, 30 Cal. App.3d 416, 106 Cal. Rptr. 333 (1973); Figarsky v. Historic Dist. Comm'n, 171 Conn. 198, 368 A.2d 163 (1976); Rebman v. City of Springfield, 111 Ill. App.2d 430, 250 N.E.2d 282 (1969); Department of Natural Resources v. Indiana Coal Council, Inc., 542 N.E.2d 1000 (Ind. 1989), cert. denied, 493 U.S. 1078, 110 S.Ct. 1130, 107 L.Ed.2d 1036 (1990); Allen Realty, Inc. v. City of Lawrence, 14 Kan. App. 2d 361, 790 P.2d 948 (1990); Mayor and Aldermen of the City of Annapolis v. Anne Arundel County, 271 Md. 265, 316 A.2d 807 (1974); Sleeper v. Old King's Highway Regional Historic Dist. Comm'n, 11 Mass. App. Ct. 571, 417 N.E.2d 987 (1981); Thompson v. City of Red Wing, 455 N.W.2d 512 (Minn. Ct. App. 1990); Lafayette Park Baptist Church v. Board of Adjustment, 599 S.W.2d 61 (Mo. Ct. App. 1980); Shubert Org., Inc. v. Landmarks Preservation Comm'n, 166 A.D.2d 115, 570 N.Y.S.2d 504, appeal dismissed, 78 N.Y.2d 1006, 575 N.Y.S.2d 456, 580 N.E.2d 1059, review denied, 79 N.Y.2d 751, 579 N.Y.S.2d 651, 587 N.E.2d 289 (1991), and cert. denied, ___ U.S. *536 ___, 112 S.Ct. 2289, 119 L.Ed.2d 213 (1992); Buttnick v. City of Seattle, 105 Wash.2d 857, 719 P.2d 93 (1986) (en banc).
Moreover, the Supreme Court has repeatedly reaffirmed the principle that a regulation results in a taking only when it denies an owner all economically viable use of its land. Lucas v. South Carolina Coastal Council, ___ U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Florida courts have also recognized that only a deprivation of all economically viable use of property will be held to constitute a taking. Lee County v. Morales, 557 So.2d 652 (Fla. 2d DCA), review denied, 564 So.2d 1086 (Fla. 1990); Glisson v. Alachua County, 558 So.2d 1030 (Fla. 1st DCA), review denied, 570 So.2d 1304 (Fla. 1990).
Second, Miami's City Commission did not unlawfully delegate its power to the Preservation Board. The task of determining the boundaries of historic districts is not a fundamental legislative task, but a fact-finding function. Contrary to petitioners' argument, Florida courts have long recognized that the fact-finding function involved in designating districts can be delegated to quasi-judicial bodies. State ex rel. Ball v. Robinson, 146 Fla. 615, 1 So.2d 621 (1941); Burnett v. Greene, 105 Fla. 35, 144 So. 205 (1931); McMullen v. Newmar Corp., 100 Fla. 566, 129 So. 870 (1930); Brewster Phosphates v. State, Dep't of Envtl. Regulation, 444 So.2d 483 (Fla. 1st DCA), review denied, 450 So.2d 485 (Fla. 1984).
Florida's delegation doctrine requires that the legislature make "fundamental and primary policy decisions" and issue "some minimal standards or guidelines" to guide the administration of legislative programs. Brown v. Apalachee Regional Planning Council, 560 So.2d 782, 784 (Fla. 1990). The "test in determining the sufficiency of guidelines is whether they are adequate to enable the agency and the courts to determine whether the agency is carrying out the legislature's intent." Id. at 784 (citations and quotations omitted).
Here, the policy of historic preservation was established by the legislative body, the Miami City Commission, not by the Historic Preservation Board. See Chapter 23.1, Miami Code. Because the City itself identified this district as historic in its 1989 Comprehensive Neighborhood Plan, and the designated district conforms to that identified area, it is clear that the Preservation Board "is carrying out the legislature's intent." Apalachee Regional Planning Council, 560 So.2d at 784. Therefore, I would find that the designation of this historic district does not involve an unlawful delegation of legislative power.
Third, the standards in the preservation ordinance are not vague at all and are sufficiently specific to provide adequate guidance to the administrative body. The designation criteria provide as follows:
(A) Criteria for designation. Properties may be designated as historic sites, historic districts, or archaeological zones only if they have significance in the historical, cultural, archaeological, aesthetic, or architectural heritage of the city, state, or nation; possess integrity of design, setting, materials, workmanship, feeling, and association; and meet one (1) or more of the following criteria:
(1) Are associated in a significant way with the life of a person important in the past; or
(2) Are the site of a historic event with significant effect upon the community, city, state, or nation; or
(3) Exemplify the historical, cultural, political, economic, or social trends of the community; or
(4) Portray the environment in an era of history characterized by one (1) or more distinctive architectural styles; or
(5) Embody those distinguishing characteristics of an architectural style, or period, or method of construction; or
(6) Are an outstanding work of a prominent designer or builder; or
(7) Contain elements of design, detail, materials, or craftsmanship of outstanding *537 quality or which represent a significant innovation or adaptation to the South Florida environment; or
(8) Have yielded, or may be likely to yield, information important in prehistory or history.
§ 23.1-4(A), Miami Code.
Numerous courts have rejected vagueness challenges to similar historic preservation ordinances. Penn Central, 438 U.S. at 132-33, 98 S.Ct. at 2663-64; Mayes v. City of Dallas, 747 F.2d 323 (5th Cir.1984); Maher v. City of New Orleans, 516 F.2d 1051 (5th Cir.1975), cert. denied, 426 U.S. 905, 96 S.Ct. 2225, 48 L.Ed.2d 830 (1976); Second Baptist Church v. Little Rock Historic Dist. Comm'n, 293 Ark. 155, 732 S.W.2d 483 (1987); Bohannan v. City of San Diego, 30 Cal. App.3d 416, 106 Cal. Rptr. 333 (1973); Figarsky v. Historic Dist. Comm'n, 171 Conn. 198, 368 A.2d 163 (1976); Citizens Committee to Save Historic Rhodes Tavern v. District of Columbia Dep't of Hous. & Community Dev., 432 A.2d 710 (D.C.Ct.App.), cert. denied, 454 U.S. 1054, 102 S.Ct. 599, 70 L.Ed.2d 590 (1981); City of New Orleans v. Levy, 223 La. 14, 64 So.2d 798 (1953); Opinion of the Justices to the Senate, 333 Mass. 773, 128 N.E.2d 557 (1955); U-Haul Co. of Eastern Missouri, Inc. v. City of St. Louis, 855 S.W.2d 424 (Mo. Ct. App. 1993); Lafayette Park Baptist Church v. Board of Adjustment, 599 S.W.2d 61 (Mo. Ct. App. 1980); Town of Deering ex rel. Bittenbender v. Tibbetts, 105 N.H. 481, 202 A.2d 232 (1964); City of Santa Fe v. Gamble-Skogmo, Inc., 73 N.M. 410, 389 P.2d 13 (1964); Salvatore v. City of Schenectady, 139 A.D.2d 87, 530 N.Y.S.2d 863 (1988); A-S-P Assocs. v. City of Raleigh, 298 N.C. 207, 258 S.E.2d 444 (1979); Village of Hudson v. Albrecht, Inc., 9 Ohio St.3d 69, 458 N.E.2d 852, appeal dismissed, 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 814 (1984); Bellevue Shopping Center Assocs. v. Chase, 574 A.2d 760 (R.I. 1990); State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217, cert. denied, 350 U.S. 841, 76 S.Ct. 81, 100 L.Ed. 750 (1955).
Moreover, there are several procedural safeguards in the ordinance which reinforce the legislative control of the Board's exercise of its discretion. These procedural safeguards include: 1) a board of experts consisting of an architect, landscape architect, historian, architectural historian, real estate broker, business person, and three other citizens with knowledge of the City's historical and architectural heritage, section 62-71, Miami Code; 2) specific definitions of terms used, section 23.1-2, Miami Code; 3) rigorous notice requirements including individual mailings to all affected property owners, section 23.1-4(B)(3), Miami Code; 4) a quasi-judicial public hearing, id.; 5) a permitting process for development, section 23.1-5, Miami Code; 6) a variance from any aspect of the permitting process that constitutes an undue economic hardship, section 23.1-5(B)(4)(b), Miami Code; and 7) an appeal process to the City Commission and then to Circuit Court, section 23.1-5(B)(4)(e), Miami Code.
In fact, delegating historic preservation fact-finding to a body of experts removes the decision from the political process, which often centers on "who the owner is, who the objectors are ... and whose ox is begin fattened or gored... ." Snyder v. Board of County Comm'rs of Brevard County, 595 So.2d 65, 73 (Fla. 5th DCA 1991), aff'd in part, reversed in part, 627 So.2d 469 (Fla. 1993). For this reason, delegation to a Board of historic preservation experts has been held to be a protection against arbitrary political infringement. See, e.g., Maher v. City of New Orleans, 516 F.2d at 1062. In addition, the right to appeal to the legislative body is also frequently relied upon as a basis for holding that standards and criteria are adequate. See id. at 1062-63, Bohannan v. City of San Diego, 106 Cal. Rptr. at 339; A-S-P Assocs. v. City of Raleigh, 258 S.E.2d at 455.
Finally, I see no basis for an equal protection challenge, where, as here, the Historic Preservation Board has procedures and standards distinct from the board, procedures and standards governing general zoning decisions. Whereas historic preservation is concerned with protecting historic structures and significant existing architecture, zoning concerns the use of land, as well as the density and the location of buildings on the land. Mayor and Aldermen of the City of Annapolis v. Anne Arundel County, 316 *538 A.2d at 821. Therefore, a rational basis exists to separate historic preservation from zoning decisions, because historic preservation decisions involve a special expertise and require considerations of criteria and purpose that differ from those of zoning.
In Penn Central, the Court found that the "objective of preserving structures and areas with special historic, architectural, or cultural significance" is a constitutionally permissible goal and that the ordinance method of designating specific districts and landmarks was an appropriate means to achieve this objective. Penn Central, 438 U.S. at 129, 98 S.Ct. at 2662. Where a classification of property is related to a legitimate governmental interest, it will be upheld. See Sullivan v. Stroop, 496 U.S. 478, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990). Because a rational basis exists for treating zoning different from historic preservation, the Historic Preservation Ordinance does not violate equal protection.
In conclusion, historic preservation is not a new phenomenon. It began in the mid 1800's with a private effort to save Mt. Vernon. Donald G. Hagman & Julian Conrad Juergensmeyer, Urban Planning and Land Development Control Law § 14.6, at 461 (1986). In 1931, Charleston, South Carolina, became the first city to zone a historic district. Carol M. Rose, Preservation and Community: New Directions in the Law of Historic Preservation, 33 Stan.L.Rev. 473, 505 (1981). Historic preservation efforts expanded in the 1960's in the wake of massive urban renewal and highway projects that destroyed historic structures by the score. Christopher J. Duerksen, Historic Preservation Law, in 1 Ziegler, Rathkopf's The Law of Zoning and Planning § 15.02, at 15-8 (4th ed. 1994). Historic preservation is part and parcel of an expanded concept of public welfare seeking to bring mellifluous harmony to our communities  to value and conserve the unique heritage of our past in order to enrich the quality of life for our present and future generations. See § 267.061(1)(a), Fla. Stat. (1993).
NOTES
[1] The Board was created by the City of Miami Historic Preservation Ordinance. The Ordinance delineates the Board's composition, the procedures for appealing Board determinations, and procedures for obtaining demolition permits for historic structures.
[2] City of Miami City Commission Resolution No. 92-149, adopted February 18, 1992.