Dear Representative Covey:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Title 4 O.S. Supp.2006, § 46 of the Oklahoma Statutes permits municipalities to regulate potentially dangerous or dangerous dogs as long as the regulations are not breed-specific. Does 4 O.S. Supp.2006, § 46 prohibit a municipality from regulating dangerous or potentially dangerous dogs as determined by the Centers for Disease Control as having the most human dog-bite-related fatalities or considered most likely to kill or seriously maim?
You further clarified that the determination of the Centers for Disease Control ("CDC") to which you are referring in your question is a special report in the Journal of the American Veterinary Medical Association ("JAVMA"), issued September 15, 2000, and authored by representatives of the CDC, the Humane Society and the American Veterinary Medical Association. See Jeffrey J. Sacks et al., Special Report: Breeds of dogsinvolved in fatal human attacks in the United States between 1979 1998, 217 J. AM. VET. MED. ASS'N 836 (2000), available at
http://www.cdc.gov/ncipc/duip/dogbreeds.pdf.[1] The JAVMA special report contains tables listing specific pure-and cross-bred breeds of dogs involved in human dog-bite-related fatalities, from those breeds involved in the highest number of fatalities to those involved in the lowest number. See id. at 837-38. Accordingly, your question asks if, by incorporating the JAVMA special report in some manner in regulating dangerous dogs, a municipality has enacted a regulation that is breed-specific. Title 4 O.S. Supp.2006, § 46(B) states that "[p]otentially dangerous or dangerous dogs may be regulated through local, municipal and county authorities, provided the regulations are not breed specific." Id. We discussed the prohibition on breed-specific regulations by municipalities set out in Section 46 in Attorney General Opinion 05-27.
In Attorney General Opinion 95-28, we explained that "reference to the standards of a non-governmental agency is an appropriate method of the exercise of legislative power" and described such an "incorporation by reference" as providing a "permissible legislative yardstick" by which to measure conduct. Id. at 63, 64. See also Lafayette Park BaptistChurch v. Bd. of Adjustment, 599 S.W.2d 61, 64 (Mo.Ct.App. 1980) ("Although the use of incorporation by reference in a legislative enactment has been attacked before, it is recognized to constitute a valid method of legislation."); 5 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 16:12 (Thomson et al. eds. 3d ed. 2002) (West, Westlaw through July 2007) ("[I]n the absence of a statutory or charter provision to the contrary, the adoption by reference of documents in municipal ordinances is valid where the document adopted is sufficiently identified and is made part of a public record."). However, we did not explain the legal effect of such an incorporation by reference.
While not binding, the Eleventh Circuit United States Court of Appeals provided a useful and persuasive summary of the effect of incorporation by reference:
 Incorporation by reference is a form of legislative shorthand; the effect of an incorporation by reference is the same as if the referenced material were set out verbatim in the referencing statute. A legislature-for example, a city council-may look to an infinite variety of sources to reference in crafting its law as long as the referenced material is both certain and readily available.
Artistic Entertm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1206
(11th Cir. 2003). This rule is analogous to Oklahoma's rule governing statutes incorporating by reference other statutes and implicates the same principles. See, e.g., Ex parte McMahan, 237 P.2d 462, 466
(Okla.Crim.App. 1951) (citations omitted) (describing as a "well-settled canon" the rule that "[w]here one statute adopts the particular provisions of another by a specific and descriptive reference . . ., the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute"). Accordingly, any municipal ordinance regulating dangerous or potentially dangerous dogs referring to all or part of the JAVMA special report, or any other document, would be incorporating the referenced material as if the referenced material were set out verbatim in the ordinance. To the extent that the referenced material referred to specific breeds of dogs, the enacting municipality would have adopted a breed-specific ordinance.
It is, therefore, the Official Opinion of the Attorney Generalthat:
 1. Title 4 O.S. Supp.2006, § 46 of the Oklahoma Statutes permits local authorities to regulate potentially dangerous or dangerous dogs, provided the regulations are not breed specific. 4 O.S. Supp.2006, § 46(B).
 2. The Centers for Disease Control report to which you refer, Jeffrey J. Sacks et al., Special Report: Breeds of dogs involved in fatal human attacks in the United States between 1979 1998, 217 J. AM. VET. MED. ASS'N 836 (2000), identifies by specific pure- and cross-bred breeds of dogs, breeds most frequently involved in human dog-bite-related fatalities.
 3. Any municipal ordinance regulating dangerous or potentially dangerous dogs referring to all or part of the JAVMA report, or any other document, would be incorporating the referenced material as if the referenced material were set out verbatim in the ordinance. To the extent that the referenced material referred to specific breeds of dogs, the enacting municipality would have adopted a breed-specific ordinance and would be in violation of 4 O.S. Supp.2006, § 46(B).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
JOANN T. STEVENSON ASSISTANT ATTORNEY GENERAL
[1] Your letter suggests that the city of El Reno, Oklahoma, may have adopted an ordinance incorporating in some manner the JAVMA special report. See letter from James E. Covey, State Representative to Drew Edmondson, Oklahoma Attorney General (July 3, 2007). El Reno's ordinance regulates "dangerous dogs" defined according to past behavior, the purposes for which the dog is owned or harbored or "a variety as determined by the Center of Disease Control as having the most human dog bite related fatalities or considered most likely to kill and seriously maim." EL RENO, OK., ORDINANCE 4011, Sec. 1, art. 1, § 135-406 (2006). It is unclear whether this ordinance refers to the JAVMA special report.