462 So.2d 1092 (1985)
GULF COAST ELECTRIC COOPERATIVE, INC., Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION and Gulf Power Company, Appellees.
No. 64983.
Supreme Court of Florida.
January 24, 1985.
*1093 Clinton E. Foster of the Law Offices of Clinton E. Foster, P.A., Panama City, for appellant.
William S. Bilenky, General Counsel and Robert D. Vandiver, Associate General Counsel, Tallahassee, for the Florida Public Service Commission.
G. Edison Holland, Jr. and Ralph A. Peterson of Beggs & Lane, Pensacola, for Gulf Power Company.
EHRLICH, Justice.
Gulf Coast Electric Cooperative (Gulf Coast) challenges a final order of the Florida Public Service Commission awarding a service area to Gulf Power Co. (Gulf Power). P.S.C. Order 12,858 (Jan. 10, 1984). We have jurisdiction pursuant to article V, section 3(b)(2), Florida Constitution.
Gulf Coast and Gulf Power dispute the right to serve a new subdivision north of Panama City. Gulf Coast, at the request of the developer and the first resident to move in, installed lines to serve the first construction phase of the area without consulting with Gulf Power, even though Gulf Power's existing lines were much closer to the development. Gulf Power responded by providing service to the second resident to move into the subdivision, despite Gulf Coast's efforts to forestall this by extending service to the same customer. At this point, Gulf Power filed a petition with the PSC to resolve the territorial dispute.
Prior to the public hearing on the dispute, the PSC asked both sides to prepare evidence of the "estimated cost" of extending service into the disputed area. At the *1094 hearing, testimony by Gulf Coast's witness showed an estimated cost roughly half again as much as Gulf Power's. The evidence at the hearing also showed that Gulf Coast's existing service lines were about twice as far, "as the crow flies," from the development as Gulf Power's, and that Gulf Coast had to use an even longer, less direct route to the development to avoid possible conflicts with future construction. The PSC awarded the right to serve the development to Gulf Power, primarily because of Gulf Power's proximity and lower estimated cost. Gulf Coast appealed to this Court.
Gulf Coast challenges the order on two grounds: first, that the consideration of estimated cost was procedurally improper, and, second, that the finding that Gulf Coast's estimated cost was lower is not supported by the record. We reject both arguments and affirm the PSC.
Section 366.04(2)(e), Florida Statutes (1983), enumerates the factors the Commission should use in evaluating a territorial dispute between a rural electric cooperative such as Gulf Coast and other electric utilities. Estimated cost is not included in the list, but the statute expressly states that the enumerated factors are not exclusive. Gulf Coast argues that if estimated cost is to be considered, the Commission erred either because it failed to promulgate a rule establishing the policy through the rulemaking procedures of the Administrative Procedure Act (APA), chapter 120, Florida Statutes, or because it did not adequately explain the nonrule policy in its order.
"There are quantitative limits to the detail of policy that can effectively be promulgated as rules, or assimilated; and even the agency that knows its policy may wisely sharpen its purposes through adjudication before casting rules." McDonald v. Department of Banking and Finance, 346 So.2d 569, 581 (Fla. 1st DCA 1977) (footnote deleted, emphasis in original), cert. denied, 368 So.2d 1370 (1979). Whether the factor of estimated cost falls below the threshold of those policies which must be promulgated, or whether the factor is "incipient policy" still undergoing administrative honing, we do not decide. We only conclude that estimated cost remains a fluid concept at this time and need not be reduced to a promulgated rule. Whether estimated cost may or may not ever be reducible to a promulgated rule is not before us at this time.
The APA does not chill the open development of policy by forbidding all utterance of [policy] except within the strict rulemaking process of Section 120.54... .
It would immediately stifle [agency] policymaking and ultimately destroy the APA to label [every statement of policy in a final order] a "rule" concerning which Section 120.54 requires notice of its intended utterance, an estimate of its economic impact, publication in Florida Administrative Weekly, public debate, review by the Administrative Procedures Committee and final publication in the Florida Administrative Code.
McDonald, 346 So.2d at 580-81. The concept of "estimated cost" is certainly less clearly delineated as policy than the administrative decision to disallow charitable contributions as utility business expenses which we found need not be promulgated as a rule in Southern Bell Telephone and Telegraph Co. v. Florida Public Service Commission, 443 So.2d 92 (Fla. 1983).
Gulf Coast argues that even if estimated cost need not be reduced to a rule, the components comprising estimated cost are not ascertainable from prior agency decisions, and the PSC failed to specify those components when it requested estimated cost in this case. However, we find no error on this point. Estimated cost was raised as an issue before the hearing, and Gulf Coast had every opportunity to explore the issue as the proceeding progressed. Although we will not second guess the Commission, we perceive the question of estimated cost, at least at this stage of policy development, to be one which may be so dependent on the individual facts of each case that the only way it may be considered is on a case-by-case basis. We also note that there is no indication in the record that *1095 Gulf Coast sought "a more definite and detailed statement" of what the Commission expected in terms of estimated cost, which was Gulf Coast's right under section 120.57(1)(b)2.d.
Gulf Coast's second challenge to the order in essence asks this Court to recalculate the estimated costs. The Cooperative claims that the estimated costs are approximately the same if two factors omitted from Gulf Power's estimate are added in: the amount expended by Gulf Power to provide service to its first customer in the subdivision, and "overhead." We find that the PSC did not abuse its discretion when it failed to include the cost to serve Gulf Power's first customer. Although the final order does not so state, apparently the Commission intended to determine, as estimated cost, the cost to provide service to the subdivision as if neither party had as yet undertaken to provide service. In other words, the costs expended in the territorial battle were inappropriate factors, since consideration of those factors could tend to encourage such disputes.
The instant case demonstrates the problem. Gulf Coast installed lines along the very route Gulf Power would have used to bring power into the development. Unable to get an easement to use the same route, Gulf Power was forced to spend $13,000-$14,000 to serve its first customer across other property not a part of the development. Gulf Coast now objects to noninclusion of this cost in the estimated cost figures, while its own costs to run 4,000 feet of line from its nearest existing line to the edge of the development were included in its estimated cost. However, Gulf Coast would have had to install that 4,000 feet of line regardless, while Gulf Power's expense was necessitated by Gulf Coast's preemptive installation. The estimated cost attributed to Gulf Power included what it would have cost had Gulf Power had access to the easement preempted by Gulf Coast, and excluded the amount actually expended.
Basing estimated cost on the ideal situation, rather than the aftermath of a territorial dispute, is within the range of discretion open to the Commission. The Commission urged in oral argument that it desires to discourage territorial disputes, which foster the kind of unnecessary expense seen here, and the cost analysis employed in this case, by refusing to recognize any advantage or disadvantage resulting from the "line war," appropriately addresses the problem.
Because we find Gulf Power's "first customer cost" appropriately excluded, there is no need to address the alleged discrepancy regarding "overhead." Gulf Power's estimated cost is significantly less than Gulf Coast's even if "overhead" is included in Gulf Power's costs.
Gulf Coast also disputes the Commission's observation that "we will not condone the utilities' competitive conduct in racing to serve the customers." More particularly, Gulf Coast objects to this characterization of its actions as an inference of wrongdoing. Whether the conduct was right or wrong, the record clearly demonstrates a competitive race. Gulf Coast did indeed act in a manner to preempt Gulf Power from serving the area. Although Gulf Coast was not obligated to consult with Gulf Power before providing service, it knew Gulf Power lines were half as far as its own yet it proceeded to install line using a circuitous route to reach one customer which, "coincidentally," wired a substantial area of the rest of the development. Once Gulf Coast became aware of Gulf Power's intentions to serve a customer, it hurriedly extended its own lines to the same customer, on the apparent pretense of serving an adjacent vacant lot. The parties accuse each other of thwarting negotiations to settle the dispute after the initial volleys. Gulf Power's efforts to serve its first customer were also costly. The Commission's decision gives neither Gulf Coast an advantage for being there first, nor Gulf Power an advantage for serving a customer regardless of expense. Whether this constitutes wrongful behavior by either party is beside the point; it is within the discretion of the Commission to refuse to condone it. In oral argument, *1096 counsel for Gulf Coast said it could not have avoided the dispute by negotiating with Gulf Power before any line was installed, because "negotiating with Gulf Power Co. is like negotiating with a circular saw ... and I suspect that they feel the same way." Perhaps utilities will learn from this case that a circular saw may be of less fearsome prospect than the PSC.
Accordingly, the order of the Commission is affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD and SHAW, JJ., concur.