654 So.2d 170 (1995)
METROPOLITAN DADE COUNTY, Petitioner,
v.
P.J. BIRDS, INC., Respondent.
No. 93-1578.
District Court of Appeal of Florida, Third District.
April 12, 1995.
As Amended May 5, 1995.
*172 Robert A. Ginsburg, County Atty., and Thomas W. Logue, Asst. County Atty., for petitioner.
Eckert, Seamans, Cherin & Mellott and Eileen Ball Mehta and Stanley B. Price, for respondent.
Before BARKDULL, JORGENSON and COPE, JJ.
COPE, Judge.
Metropolitan Dade County petitions for a writ of certiorari to quash an order of the appellate division of the circuit court. The circuit court overturned the designation of a portion of the Parrot Jungle tourist attraction as a Dade County historic site. We conclude that the circuit court departed from the essential requirements of law and grant certiorari.

I
Late in 1990, the Dade County Historic Preservation Board ("the Board") decided to consider Parrot Jungle for designation as a historic site. The Board's staff prepared a detailed report recommending a twelve acre portion of the Parrot Jungle property for such designation. After a public hearing, the Board voted in favor of the designation.
The owner, P.J. Birds, Inc., appealed to the Board of County Commissioners, arguing that it had not been given a full and fair opportunity to present its case in opposition to the designation. At the owner's request, the County Commission returned the matter to the Historic Preservation Board for a new hearing.
At the new hearing, the staff report and recommendations were again submitted to the Board. There was extensive testimony from the Board's Executive Director and the public. A number of written submissions were also accepted into the record. Although the owner had requested the second hearing, the owner did not present any evidence and the principals of the owner corporation declined to answer any questions put by the Board. The owner's input was confined solely to having the owner's counsel cross-examine the witnesses who testified, and in making legal argument.
The Historic Preservation Board again voted, without dissent, in favor of the designation as a historic site. The owner again appealed to the County Commission, which conducted a hearing. The County Commission upheld the historic designation.
The owner then sought review in the circuit court. The circuit court panel concluded that the owner's procedural due process rights had been violated because the Historic Preservation Board had applied a standard of "exceptional importance" when such standard was not explicitly defined in the ordinance or by Historic Preservation Board rule. The County has petitioned for certiorari.

II
Under the Dade County Historic Preservation Ordinance,[1] there are two distinct sets of historic designation criteria. There is a set of general criteria which applies to sites which attained significance fifty or more years ago (the "General Criteria"). The General Criteria are set forth in the Historic Preservation Ordinance as follows:
Sec. 16A-10. Designation process and procedure.
(I) [Criteria.] The Board shall have the authority to designate areas, places, buildings, structures, landscape features, archeological sites and other improvements or physical features, as individual sites, districts or archeological zones that are significant in Dade County's history, architecture, archeology or culture and possess an integrity of location, design, setting, materials, workmanship or association, or:
(a) Are associated with distinctive elements of the cultural, social, political, economic, scientific, religious, prehistoric and architectural history that have contributed to the pattern of history in the community, *173 Dade County, south Florida, the State or the nation; or
(b) Are associated with the lives of persons significant in our past; or
(c) Embody the distinctive characteristics of a type, period, style or method of construction or work of a master; or that possess high artistic value; or that represent a distinguishable entity whose components may lack individual distinction; or
(d) Have yielded, or are likely to yield information in history or prehistory; or
(e) Are listed in the National Register of Historic Places.
Ch. 16A, Metropolitan Dade County Code.
There is an additional criterion for sites attaining significance within the past fifty years. Pertinent here is the following:
(II) [Properties not generally considered; exceptions.] ... [P]roperties that have achieved significance within the last fifty (50) years, will not normally be considered for designation. However, such properties will qualify if they are integral parts of districts that do meet the criteria, or if they fall within the following categories:

* * * * * *
(f) A property or district achieving significance within the past fifty (50) years if it is of exceptional importance.

Id. § 16A-10 (II) (emphasis added). A lessthan-fifty-year-old property must not only meet the General Criteria, but in addition the site must be of "exceptional importance."
Thus, the ordinance creates what may be described as an "Over-fifty Rule," and an "Under-fifty Rule." These may be summarized as follows:
I. Over-fifty Rule:

Applies to: Site which achieved significance fifty or more years ago.

Criteria: Site must meet General Criteria (§ 16A-10(I)).
II. Under-fifty Rule:

Applies to: Site which achieved significance less than fifty years ago.

Criteria: Site must meet General Criteria (§ 16A-10(I))
AND
Site must be of exceptional importance.
The fact that there are two different sets of criteria is the point overlooked by the circuit court panel below.

III
The question considered by the Historic Preservation Board in this case was how to apply the designation standards where the tourist attraction came into existence over fifty years ago, but where additional structures have been added within the past fifty years.
The Historic Preservation Board's Staff Summary[2] states in part:
Parrot Jungle and Gardens which lies a few miles south of Miami is one of Florida's most unique tourist attractions. When it opened on December 20, 1936 it was billed as the "Only One in the World." For fifty-four years visitors have enjoyed the subtropical and tropical landscaping, man-made paths, and limestone structures that make up the jungle where hundreds of exotic birds are allowed to fly free.
The Staff Summary explains that the Parrot Jungle tourist attraction became commercially successful immediately and has operated continuously since its opening. The summary outlines the areas of Parrot Jungle which constituted the original tourist attraction and the structures built prior to World War II. The Staff Summary then goes on to explain that a duck pond and flamingo lake were added in the 1940's, a new entrance in 1954, and an amphitheater in 1974. The original and newer features are all integral to the tourist attraction.
The Staff Report recommended that twelve acres be designated as a historic site, out of Parrot Jungle's total of 31 acres. At the public hearing, the Board's Executive Director, Margot Ammidown, testified that from a historic preservation point of view, the property had attained significance over fifty years ago, and the "Over-fifty" standard applied. The original buildings are over fifty *174 years old. The Parrot Jungle and Gardens became commercially successful over fifty years ago and have been operating continuously for over half a century. Indeed, Parrot Jungle's own present-day promotional brochure prominently states "Parrot Jungle and Gardens ... Over 50 Years of Beauty and Tradition."
Ms. Ammidown then pointed out that in addition to the over fifty-year-old buildings, the site also includes some buildings and landscape features which were added within the last fifty years. Ms. Ammidown addressed the interpretation of the Historic Preservation Ordinance in such a case:
In terms of some specific issues I think might come up, I would like to address one in particular since this is a very complicated site. We are not talking about an individual building. We are talking about a site that contains numerous buildings on a number of acres. I would like to point out that even though buildings were added mostly throughout the 1940's that does not disqualify them from the designation. .. . You can designate since the Board considers an area in terms of all the contributing factors to the overall historic character of the property. We think certainly that the areas of the Parrot Jungle that were added in the 1940's represent areas that contributed to the overall historic character of the park. Also the alterations that were done  they also were done in a fashion that greatly contributed to the historic aspect of the park.
(Emphasis added).
Simply put, if a property has attained significance dating back over fifty years, it does not lose that significance simply because there has been additional construction or modification within the past fifty years, so long as the additional construction or modification has contributed to the overall historic character. Particularly for a working commercial property, this is a rule of practical necessity.
When the Board began its deliberations, the County Attorney served as the Board's counsel. The County Attorney made very clear that the Board had two alternatives before it  what has been referred to in this opinion as the "Over-fifty rule" and the "Under-fifty rule." The County Attorney stated, "[Y]ou will have to consider whether the significance of this property dates over 50 years and whether the younger elements on the property are contributing or whether the property is of exceptional importance. Either finding would support a designation." (Emphasis added).
The Board decided to make the designation under both alternatives. It enacted a resolution stating, in part, that the property "is over 50 years old and is a property of exceptional importance... ." (Emphasis added). On appeal, the County Commission likewise voted in favor of the designation on both grounds. The County Commission Resolution states, in part, that "the Parrot Jungle, which opened in 1936, is over fifty (50) years old, and is of exceptional importance... ."

IV
When this matter arrived in the circuit court, that court simply overlooked the fact that the Parrot Jungle designation is based on both the "Over-fifty" and the "Under-fifty" rules. This is facially clear from the circuit court opinion. The circuit court said that the "controlling [issue] is whether Appellant's [the owner's] procedural due process rights were violated by the board's undefined and ad hoc standard of `exceptional importance'." Circuit court opinion at 3. The "exceptional importance" standard is solely part of the "Under-fifty" rule. It has nothing at all to do with the "Over-fifty" rule.[3] By failing to apply the "Over-fifty" standard, the circuit court applied the incorrect law.[4]
*175 "[A] reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence." Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 988 (Fla. 1985). Here, the Board interpreted the "Over-fifty" portion of the ordinance to be applicable where the site achieved significance over fifty years ago, so long as more recent structures are consistent with, and contribute to the overall historic character of, the historic site.
The circuit court was obliged to defer to the agency's interpretation of the ordinance on this point. The Board's interpretation of the "Over-fifty" standard in this case represented a reasonable construction of the Historic Preservation Ordinance. See id.; see also Florida Cable Television Ass'n v. Deason, 635 So.2d 14, 15 (Fla. 1994); Department of Insurance v. Southeast Volusia Hospital Dist., 438 So.2d 815, 820 (Fla. 1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984). That is especially so where, as here, the County Commission  the legislative body which enacted the ordinance  has specifically reviewed and approved the Board's interpretation. The historic designation should have been sustained on the basis of the "Over-fifty" rule.

V
The Historic Preservation Board and the County Commission also found that the Parrot Jungle site qualified for designation pursuant to the "Under-fifty" rule. Since the owner vigorously disputed the applicability of the "Over-fifty" rule to Parrot Jungle, the Historic Preservation Board and County Commission analyzed the site under both standards and found that the site qualified under both.
In order for a site to qualify for the "Under-fifty" rule, the site must satisfy two tests. First, an "Under-fifty" property must meet the General Criteria spelled out in subsection 16A-10(I) of the Dade County Code. The owner has made no complaint about the specificity of the General Criteria.[5] Second, the property must also be "of exceptional importance." Id. § 16A-10(II).
The circuit court panel found fault with the fact that the Historic Preservation Board had not heretofore adopted a rule to define "exceptional importance," and that explicit criteria defining "exceptional importance" had been announced by the Historic Preservation Board in the course of its administrative hearing on the Parrot Jungle designation. Circuit court opinion at 3-4. We conclude that here, too, the circuit court panel applied the incorrect law.

A
Where a statute or ordinance delegates powers to an administrative body, there must be sufficient standards to guide the agency in the administration of the law. See City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764, 765 (Fla. 1974) (local government); North Bay Village v. Blackwell, 88 So.2d 524, 526 (Fla. 1956); see also Askew v. Cross Key Waterways, 372 So.2d 913, 924 (Fla. 1978) (state government).[6]
*176 This rule must be flexibly applied. The Florida Supreme Court has said:
The specificity with which the legislature must set out statutory standards and guidelines may depend upon the subject matter dealt with and the degree of difficulty involved in articulating finite standards. The same conditions that may operate to make direct legislative control impractical or ineffective may also, for the same reasons, make the drafting of detailed or specific legislation for the guidance of administrative agencies impractical or undesirable. State, Department of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970); Burgess v. Florida Department of Commerce, 436 So.2d 356 (Fla. 1st DCA 1983), review denied, 447 So.2d 885 (Fla. 1984).
In re Advisory Opinion to the Governor, 509 So.2d 292, 311 (Fla. 1987); accord Clark v. State, 395 So.2d 525, 527-28 (Fla. 1981). The circuit court noted that the ordinance itself does not define "exceptional importance" and the Historic Preservation Board had not adopted rules to define it. The court concluded, in part, that the term itself did not give the Board sufficient guidance.
In so ruling the circuit court overlooked the administrative law cases which allow reference to generally recognized professional standards in interpreting the meaning of a statutory term. See Florida State Board of Architecture v. Wasserman, 377 So.2d 653, 656 (Fla. 1979) (referring to standards recognized in professional field of architecture); Jones v. Department of Revenue, 523 So.2d 1211, 1213 (Fla. 1st DCA 1988) (referring to professional standards for assessment levels); see also D'Alemberte v. Anderson, 349 So.2d 164, 168 (Fla. 1977); Conner v. Joe Hatton, Inc., 216 So.2d 209, 211-13 (Fla. 1968).
The field of historic preservation has been under development for many years now. Federal legislation in this area includes the 1906 enactment of the Antiquities Act, the 1935 enactment of the Historic Sites Act, and the 1966 adoption of the National Historic Preservation Act. 1 Edward H. Ziegler, Jr., Rathkopf's The Law of Zoning & Planning § 15.06[1] (1994). As a matter of state policy, Florida follows the objectives of the National Historic Preservation Act. See §§ 267.021(5), 267.061(2)(c), (3)(c), (3)(h), Fla. Stat. (Supp. 1994). All fifty states have adopted historic preservation laws, and numerous local preservation ordinances exist as well. See Estate of Tippett v. City of Miami, 645 So.2d 533, 535 (Fla. 3d DCA 1994) (Gersten, J., concurring).
The Dade County Historic Preservation Ordinance is patterned on the federal historic preservation regulations. The Dade County "exceptional importance" standard for "Under-fifty" properties is drawn directly from 36 C.F.R. section 60.4. The National Park Service has issued a publication delineating the professional standards that apply to the "exceptional importance" term as used within the Federal Historic Preservation Regulations  the source from which the Dade Ordinance drew that term. See National Park Service, U.S. Department of the Interior, Guidelines for Nominating and Evaluating Properties that have Achieved Significance Within the Last Fifty Years (National Register Bulletin No. 22).
At the hearing before the Historic Preservation Board, Ms. Ammidown testified regarding the "exceptional importance" standard in the Dade Historic Preservation Ordinance:
Q Now the reference to that Section of the Code that refers to "exceptional importance": Is exceptional importance defined in the Code?
A It's not specifically defined.
Q Would you, therefore, agree that its definition is somewhat subjective?
A Because there is such a wide array of historical and archeological sites, yes.
Q It would be a subjective definition?
A Well, I think certain professional standards and evaluations would apply.

* * * * * *
[Owner's Counsel]: I am asking her to tell me where I would have to go to find out if something was of exceptional importance.

*177 Ms. Ammidown: It's not in the Regulations, but I could cite other case histories... .
* * * * * *
[County Attorney]: Can I ask a question to clarify this area. Ms. Ammidown you are a professional in this area of professional designation. What is your understanding of the term "exceptional importance"?
Ms. Ammidown: Well, I would apply a couple of questions to such a site. One is: Is it one of a kind, is it a unique historic site. We may have numerous Art Deco buildings. Is it something that is one of a kind. Another question is: Is it a site that is significant in multiple areas? The Board has the obligation of designating sites for either historical significance, architectural significance, landscape design significance, archeological significance. Is it a site that is significant in more than one area and also is it particularly significant to the cultural history of an area? For example, in this case, tourism has been a principal industry of Dade County and you know in that respect that the property take[s] on added significance because it reflects something unique about our area.
[County Attorney]: Among historic preservation professionals, is that the generally accepted standard?

Ms. Ammidown: Those are the types of things that are considered exceptional  its contribution to an area of growth and development.
(Emphasis added).
In sum, there are professional standards which are generally accepted within the field of historic preservation and which are applied on a case-by-case basis.[7] Applying those standards, the Historic Preservation Board's resolution states, in part, that "Parrot Jungle and Gardens ... is a property of exceptional importance because: it is one of a kind; directly related to major themes in this community's history; and significant in multiple areas, including architecture, history, and landscape design[.]" The County Commission adopted the Historic Preservation Board's position on this point.

B
Alternatively, assuming arguendo that there was an unlawful delegation problem, that problem was cured when the County Commission  the legislative body which enacted the Ordinance  passed its resolution ratifying the Historic Preservation Board's interpretation of the term "exceptional importance." Such a ratification procedure is specifically authorized by Askew v. Cross Key Waterways, 372 So.2d 913, 925. In that case the Florida Supreme Court addressed the remedies available to the legislature where there has been an unlawful delegation of legislative authority. Id. The court stated:
[T]he legislature need only exercise its constitutional prerogative and duty to identify and designate those resources and facilities [which are areas of critical state concern]. It may be done in advance as with [the statutory designation of] the Big Cypress area of critical state concern, Section 380.055, Florida Statutes (1975), or through ratification of administratively developed recommendations... .
Id. at 925 (emphasis added).[8]
Here, the Historic Preservation Board adopted a definition of "exceptional importance" and included it in the Board's resolution designating Parrot Jungle as a historic site. The County Commission approved that designation, and in its resolution reiterated *178 the Board's definition.[9] This constitutes ratification within the latitude allowed by Askew v. Cross Key Waterways.

C
The circuit court held that the "ad hoc determination of rules and criteria by the Board during the designation hearing was an abuse of the rule-making process which violated Appellant's [owner's] due process rights guaranteed under the Florida and U.S. Constitutions." Circuit court opinion at 4. The court faulted the Historic Preservation Board for not having previously adopted a rule to define the "exceptional importance" standard.
We respectfully disagree with the circuit court's position on this legal issue. Writing in the context of the Florida Administrative Procedure Act, the Florida Supreme Court has said, "There are quantitative limits to the detail of policy that can effectively be promulgated as rules, or assimilated; and even the agency that knows its policy may wisely sharpen its purposes through adjudication before casting rules." Gulf Coast Elec. Coop., Inc. v. Florida Public Serv. Comm'n, 462 So.2d 1092, 1094 (Fla. 1985) (citation omitted; emphasis in original); see also Southpointe Pharmacy v. Department of Health & Rehabilitative Servs., 596 So.2d 106, 111 (Fla. 1st DCA 1992); Florida League of Cities, Inc. v. Administration Comm'n, 586 So.2d 397, 406 (Fla. 1st DCA 1991).
"Administrative agencies are not required to institute rulemaking procedures each time a new policy is developed, although that form of proceeding is preferable where established industry-wide policy is being altered." Florida Cities Water Co. v. Florida Public Serv. Comm'n, 384 So.2d 1280, 1281 (Fla. 1980) (citations omitted); see also City of Tallahassee v. Florida Public Serv. Comm'n, 433 So.2d 505, 508 (Fla. 1983). "The agency rule making function involves the exercise of agency discretion and this Court will not substitute its judgment for that of the agency on an issue of discretion." Citizens of Florida v. Mayo, 357 So.2d 731, 733 (Fla. 1978). The Florida Supreme Court has thus explicitly recognized that an administrative agency may proceed with case-by-case adjudication, and that incipient policy may be allowed to develop before the agency adopts rules.
The historic preservation literature makes clear that the "exceptional importance" standard is one best suited for development through case-by-case adjudication. Discussing the counterpart federal historic preservation criteria, the National Park Service has said:
The National Register Criteria for Evaluation encourage nomination of recently significant properties if they are of exceptional importance to a community, a State, a region, or the Nation. The criteria do not describe exceptional, nor should they. Exceptional, by its own definition, cannot be fully catalogued or anticipated. It may reflect the extraordinary impact of a political or social event. It may apply to an entire category of resources so fragile that survivors of any age are unusual. It may be the function of the relative age of a community and its perceptions of old and new. It may be represented by a building or structure whose developmental or design value is quickly recognized as historically significant by the architectural or engineering profession. It may be reflected in a range of resources for which a community has an unusually strong associative attachment.
Thus a complete list of exceptionally significant resources cannot be prepared or precise indicators of exceptional value prescribed.
National Park Service, U.S. Department of the Interior, Guidelines for Evaluating and Nominating Properties that have Achieved Significance within the last 50 years, at 3.
Therefore, under Florida Supreme Court authority, the Historic Preservation Board *179 was not required to adopt a rule to define the standard of "exceptional importance." It had the latitude to proceed in case-by-case adjudication. The circuit court order on this point did not apply the correct law.

D
The next question is whether, apart from the failure to adopt rules, it can be said that there was any violation of the owner's due process rights under the Florida or federal Constitutions. That question must be answered in the negative.
The Historic Preservation Board staff in this case prepared a detailed analysis of the Parrot Jungle site. The principal position of the Staff Report was that the Parrot Jungle site qualified for designation under the "Over-fifty" standard. In the Report and in the testimony, there was a thorough evaluation of the Parrot Jungle property under the General Criteria which are spelled out at length in the Dade Historic Preservation Ordinance. At no time has the owner suggested that there is any infirmity in the General Criteria.
The owner was given notice and an opportunity to be heard on the issue of historic designation. The owner was represented by very able counsel at all stages. The owner had not one, but two, plenary hearings before the Historic Preservation Board.
In the course of the second hearing before the Historic Preservation Board, the Board considered both the "Over-fifty" rule and the "Under-fifty" rule. In that context, the Executive Director testified regarding the professional standards applicable to a determination of "exceptional importance." It is important to note that each of the professional considerations mentioned by Ms. Ammidown had already been addressed within the Staff Report.
The first consideration advanced by the Executive Director was, "Is it one of a kind, is it a unique historic site[?]" On this issue, the Staff Report quoted Parrot Jungle's own promotional brochures.[10] There is, in other words, no way that the owner could have been surprised by the staff's contention that Parrot Jungle was unique; that proposition was specifically set forth in advance in the Staff Report.
The second consideration outlined by Ms. Ammidown was, "Is it a site that is significant in multiple areas?" On this issue, too, there could have been no surprise. The form for the Staff Report requires the staff to identify the specific areas in which the proposed site has "significance" as defined in the ordinance. The staff study of Parrot Jungle specifically delineated architecture, commerce, and landscape architecture as being the areas of major significance. In addition, the staff narrative covered the fact that the property contained a portion of the original stream bed of Snapper Creek, which is the only preserved example of the original stream bed, the remainder having been altered by channelization and conversion into a canal. All of these variables were identified in advance of the hearing by the Staff Report. The fact that these multiple areas of significance would be under consideration at the meeting of the Historic Preservation Board was well known to the owner, since these factors were all outlined in the Staff Report.
The final consideration discussed by Ms. Ammidown was whether the property was directly related to major themes in the community's history. Again, this is a consideration which was set forth specifically in the Staff Report, which states in part, "Parrot Jungle is significant historically because it is a fine example of a type of early 20th Century Florida tourist attraction that reflects the individual personality of its founder." The connection of Parrot Jungle with tourism in Florida and in Dade County was specifically set forth in the Staff Report. Again, there can be no surprise that this matter would be discussed, for the staff had specifically identified *180 this consideration as a factor which supported historic designation.
In sum, the Staff Report in this case had thoroughly delineated the different factors which supported the designation of this property as a historic site. These were all set forth in writing well in advance of both hearings, and provided to the owner and the Board. All of these factors were pertinent to the General Criteria set forth in section 16A-10(I).
An agency is entitled to engage in administrative adjudication. The interpretation of the term "exceptional importance" was well within the competence of the Historic Preservation Board to decide. This matter was heard on proper notice twice by the Historic Preservation Board, and twice by the County Commission. There is simply no viable claim that the owner's due process rights were violated.

VI
The Parrot Jungle site qualified for designation under both the "Over-fifty" and "Under-fifty" rules. Either rule alone would be sufficient to support the designation. The circuit court order is quashed and the matter remanded with directions to reinstate the historic designation.
JORGENSON, J., concurs.

APPENDIX
METROPOLITAN DADE COUNTY HISTORIC PRESERVATION BOARD
DESIGNATION REPORT  INDIVIDUAL SITE

* * *
Parrot Jungle and Gardens which lies a few miles south of Miami is one of Florida's most unique tourist attractions. When it opened on December 20, 1936 it was billed as the "Only One in the World." For fifty-four years visitors have enjoyed the subtropical and tropical landscaping, man-made paths, and limestone structures that make up the jungle where hundreds of exotic birds are allowed to fly free.
During the 1920s and 30s many unusual family run attractions were opened along roadsides throughout the State of Florida. Once I-95 was completed, rerouting traffic, many of these eccentric attractions died. Parrot Jungle survived because it was unique and located near an expanding metropolis. Parrot Jungle is significant historically because it is a fine example of a type of early 20th Century Florida tourist attraction that reflects the individual personality of its founder. The Parrot Jungle is still a successful attraction in a time when tourists are drawn to larger, more anonymous and corporate run attractions such as Disney World and Busch Gardens.
The man who made this whimsical fantasy into reality was Franz Scherr. Born in Austria, Scherr immigrated to the United States in 1911. After his arrival, Franz worked his way west earning a living as a carpenter. He eventually settled in Chicago where he married his wife Louise and had a successful career in construction. Louise and Franz had five children: Eugene, Francis, Constance, and twins Jerome and Eileen. During South Florida's real estate boom of the mid 1920s Franz moved his family to Homestead, Florida. Once in Homestead Franz and Louise opened a feed and supply store where they displayed a few parakeets and lovebirds.
It was his friend Joe Dumond, owner of Monkey Jungle, who inadvertently gave Franz the idea to create a Jungle where the birds could fly free. In 1936 Franz took his last twenty-five dollars and leased about twenty acres of Hammock land on Red Road. Franz moved to his new land to begin work while his family stayed in Homestead. Among the first things Franz did was blaze a trail through the hammock taking care to leave the natural vegetation. He began an intense study of sub-tropical flora, learning everything he could about the subject. In addition, he built a pine log structure with Palmetto thatched roof as an entrance building and gift shop. He then began to stock the jungle with the birds he had displayed in the feed store. He also purchased some pheasants and peacocks and ordered twenty-eight parrots.
*181 On Sunday, December 20, 1936 Parrot Jungle opened its gates to one hundred visitors who paid twenty-five cents admission. Franz guided the visitors through the jungle explaining the natural vegetation. The attraction was so successful that the whole Scherr family was able to move to Parrot Jungle just six months after it opened. They lived in the loft of the entranceway until 1939 when they built a home on Red Road.
In 1939 the Scherrs were able to purchase their hammock land for $5,000. Later, Franz added more trails, more birds, and rustic oolitic limestone structures that blend with the natural feeling evoked by the jungle. In the 1940s the original entrance on Red Road was faced with limestone and a tile roof replaced the thatch. As business grew the family expanded Parrot Jungle. In 1946 the Duck Pond was added, a small man-made pond full of cranes, spoon bills, swans, and ducks. Flamingo Lake, also man-made, was added in 1948. Seventy-five flamingoes create a tranquil and beautiful visual effect. Mr. Scherr worked with architect Tony Sherman to plan the new entrance which was completed in 1954. Like the original entrance, the new blends with the surrounding natural environment. The Parrot Bowl amphitheater was completed in 1974. All of the additions were conceived and planned by Franz Scherr. In ... 1985, Jerome Scherr, who took over Parrot Jungle's management after his father's death, designed the brick pathways which if viewed from the air create a vine. The entire Parrot Jungle complex reflects the unique interests and tastes of the Scherr family.
Since its opening in 1936 over twelve million people have passed through the gates. Many celebrities have visited Parrot Jungle, the most publicized was Winston Churchill, who made two visits in 1946. Today Parrot Jungle and Gardens is home to over one thousand exotic birds and features more than one thousand varieties of tropical plants. The gardens contain the largest and oldest native cypress hammock in Florida south of Lake Okeechobee and remnants of the original bed of Snapper Creek as well as many rare plant specimens. In 1988 Jerome Scherr sold the Parrot Jungle to businessmen and aviculturists Richard Schubot and Bern Levine, DVM.
The original stream bed of Snapper Creek is the only preserved example of Snapper Creek the rest [of] which has been altered by [having been] channelized and converted into a canal. Snapper Creek was a major Indian canoe route connecting the Everglades with Biscayne Bay. Several prehistoric Tequesta sites are known within the vicinity of Parrot Jungle, and it is probable that some evidence of Tequesta activities occur near the stream bed in Parrot Jungle and Gardens.

... .
Staff recommends the designation of Parrot Jungle as an individual historic site.
(Footnotes omitted).
BARKDULL, Judge, dissenting.
The order of the appellate division of the circuit court reads as follows:
Appellant, P.J. BIRDS, INC. (Parrot Jungle), seeks review of Dade County Resolution No. R-171-92 which affirms the Dade County Historic Preservation Board's designation of Parrot Jungle as an historic site. The Parrot Jungle contends that the manner in which the subject property was designated as an historic site violated its due process rights under the Florida and U.S. Constitutions. WE REVERSE.
The Dade County Historic Preservation Ordinance was adopted by Dade County in 1981. The Ordinance created an Historic Preservation Board (The Board) and authorizes it to prepare rules and regulations to enforce the purposes espoused by the Ordinance. Section 16A-9(2), Code of Metropolitan Dade County, Florida. Before designating a site as historic, the Ordinance requires a designation report to be filed with the Board followed by a public hearing. Such hearing is a quasi-judicial process. Section 16A-10(IV)(E), Code.
On November 15, 1990, the Board notified Appellant that Parrot Jungle was being considered for designation as an historic site and that a subsequent public hearing on the issue of designation was scheduled.

*182 On December 19, 1990, the Board conducted its public hearing on the designation of Parrot Jungle during which appellant opposed such designation. At this meeting, Appellant requested a deferral due to a pending zoning matter but was denied the request. Thereafter, the Board proceeded to adopt a resolution designating the property as an historic site. Pursuant to Section 16A-15, Code, Appellant appealed the Board's resolution to the County Commission and a second hearing on the issue of designation was granted for November 20, 1991.
During the November 20th hearing, testimony was heard regarding the "exceptional importance" standard as set forth in the Ordinance. It was admitted through this testimony that such standard is neither defined in the Ordinance nor contained in the regulations. This testimony, which was given by a Board member, continued further to define the term "exceptional importance" and specified criteria considered in a designation determination. That criteria was used by the Board in its designation decision. The Board, despite Appellants argument in opposition to the designation, voted to reaffirm its previous designation of the site.
Appellant again appealed to the County Commission for a reversal of the designation on the ground that the Board's decision denied Appellant its due process rights under the Constitution.
An appeal was heard by the County Commission on February 18, 1992, in which the Commission voted to uphold the historic designation. This appeal ensued.
The issue on appeal which we believe is controlling is whether Appellant's procedural due process rights were violated by the board's undefined and ad hoc standard of "exceptional importance". The historical designation of the property was dependent upon proof that the site is of "exceptional importance". Section 16A-10(II)(f), Code. However, the term is neither defined in the Historic Preservation Ordinance nor is there any guidance in the existing rules and regulations of the Board as to what constitutes "exceptional importance". Despite this lack of guidance, the Board, for the first time during the designation hearing defined the term "exceptional importance" and specified the criteria used in determining whether a potential site is of "exceptional importance" for designation purposes.
Due process requires compliance with the basic principles of "fundamental fairness" and guarantees the right to a full and fair hearing. Pelle v. Diners Club, Inc., 287 So.2d 737 (Fla. 3 DCA 1974). In Smith v. Portante, 212 So.2d 298, 299 (Fla. 1968), The Florida Supreme Court stated that no matter how laudable a piece of legislation may be, objective guidelines and standards should appear expressly in the Act or be within the realm of reasonable inference from the language of the Act. In the instance case, such standards used to determine "exceptional importance" for historical designation purposes were never specified in either the Ordinance or the rules and regulations. Additionally, it was admitted during the course of the designation hearing by a Board member that the term "exceptional importance" was indeed subjective and had to be applied on a case-by-case basis. Such ad hoc determination of rules and criteria by the Board during the designation hearing was an abuse of the rule-making process which violated Appellant's due process rights guaranteed under the Florida and U.S. Constitutions.
We have reviewed the other issues raised on appeal and found them to be without merit.
Accordingly, we reverse the County Commission's decision and remand the cause for further proceedings consistent with this Opinion. REVERSED AND REMANDED.
By this certiorari proceeding we are required to determine if the circuit court, in its appellate capacity, afforded procedural due process and applied the correct law. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982).[1] We are not permitted to quash *183 a decision because we may differ if we had been deciding the matter in the first instance. Education Dev. Ctr., Inc. v. City of West Palm Beach, 541 So.2d 106 (Fla. 1989); State v. Pettis, 520 So.2d 250 (Fla. 1988); Combs v. State, 436 So.2d 93 (Fla. 1983); City of Deerfield v. Vaillant, supra; Herrera v. City of Miami, 600 So.2d 561 (Fla. 3d DCA 1992); St. Johns County v. Owings, 554 So.2d 535 (Fla. 5th DCA 1989).[2]
In view of our limited jurisdiction to review the action of the circuit court, I am unable to say that it denied procedural due process or applied incorrect law, and therefore the petition for certiorari should be denied. This is particularly true when it is apparent from the record before us that no objective test was used to instigate the historical process designation[3] and further, Florida has not adopted the liberal view of a minority of jurisdictions as to a relaxation of the requirement of legislative standards in connection with any delegation of legislative power. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978).[4]
I would deny the Petition for Certiorari.
NOTES
[1] Ch. 16A, Metropolitan Dade County Code.
[2] The historical summary is set forth in the appendix to this opinion.
[3] In other words, assuming arguendo that the circuit court was correct in invalidating the "exceptional importance" standard, the circuit court's ruling would only remove the "Under-fifty" rule as a basis for the Parrot Jungle historic designation. Completely independent is the question of whether the historic designation is proper pursuant to the "Over-fifty" rule.
[4] See Education Development Center v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989); Maturo v. City of Coral Gables, 619 So.2d 455 (Fla. 3d DCA 1993); Herrera v. City of Miami, 600 So.2d 561 (Fla. 3d DCA), review denied, 613 So.2d 2 (Fla. 1992).
[5] The owner appears to argue, however, that an "Under-fifty" property does not have to satisfy the General Criteria and that the sole criterion is "exceptional importance." Such an argument clearly misreads the ordinance.

The standard of "exceptional importance" is used for purposes of selecting among "Under-fifty" properties that satisfy the General Criteria. The "exceptional importance" standard is not used as a substitute for the General Criteria. Because the circuit court discussed the "exceptional importance" standard in isolation, without mentioning the General Criteria, it appears that the circuit court may have misunderstood the limited role played by the "exceptional importance" term, and erred on this point of law. Certainly we would have a different case if the sole standard for selection was the phrase "exceptional importance"; in reality, the "exceptional importance" criterion must be read together with the General Criteria when an "Under-fifty" property is involved.
[6] At the state level the unlawful delegation doctrine derives from Article II, section 3 of the Florida Constitution, prescribing the separation of powers. See Askew v. Cross Key Waterways, 372 So.2d at 924; see also B.H. v. State, 645 So.2d 987, 991 (Fla. 1994); Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260, 263-64 (Fla. 1991).
[7] The Historic Preservation Board's transmittal memorandum to the County Commission states, in part:

"Professional standards used to determine exceptional merit include consideration of whether the site is: a) one of a kind; b) directly related to a major theme in the region's development; c) significant in multiple areas which can include history, architecture, landscape design, and archaeology."
[8] By opinion on rehearing, the court stated that the two enumerated alternatives, legislation in advance and legislative ratification of administratively developed recommendations, "present obvious remedies for the deficiencies found in section 380.05; however, it was not our purpose to indicate that the alternatives stated are exclusive." Id. at 926.
[9] The wording of the County Commission resolution approving the historic designation is substantially identical to that of the Board on this point. The County Commission resolution states, in part, that Parrot Jungle "is of exceptional importance because it is: a) one of a kind; b) directly related to a major theme in the region's development; c) significant in multiple areas which can include history, architecture, landscape design, and archaeology[.]"
[10] The Staff Report stated, "When it opened on December 20, 1936 [Parrot Jungle] was billed as the `Only One in the World.'" Appended to the Staff Report was, among other things, a contemporary Parrot Jungle promotional brochure entitled, "Parrot Jungle and Gardens," stating in part, "Over 50 years of beauty and tradition." The brochure goes on to describe Parrot Jungle as "Miami's unique bird sanctuary, [with] botanical gardens."
[1] Wherein on page 626 the following is found:

As a case moves up the appellate ladder, each level of review does not become broader. As Chief Judge Letts, speaking for the court, said: [C]ommon sense dictates that no one enjoys three full repetitive reviews to,
1. a civil service board
2. a circuit court
3. a district court of appeal... .
City of Deerfield Beach v. Vaillant, 399 So.2d 1045, 1047 (Fla. 4th DCA 1981).
* * * * * *
We hold that where full review of administrative action is given in the circuit court as a matter of right, one appealing the circuit court's judgment is not entitled to a second full review in the district court. Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines whether the circuit court afforded procedural due process and applied the correct law. Id. (Emphasis added.)
[2] Wherein at page 537 the following is found:

Indeed, the Fifth District Court of Appeal has stated in St. Johns County v. Owings, 554 So.2d 535 (Fla. 5th DCA 1989), rev. denied, 564 So.2d 488 (Fla. 1990):
`As recently emphasized by the Florida Supreme Court in Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla. 1989), a district court of appeal plays a very limited role in reviewing a circuit court's action in a zoning dispute such as this. Only the circuit court can review whether the judgment of the zoning authority is supported by competent substantial evidence. The district court of appeal merely determines whether the circuit court afforded due process and applied the correct law. See also City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). As the court in Education Development Center noted, a district court of appeal may not quash a circuit court's decision because it disagrees with the circuit court's evaluation of the evidence. 554 So.2d at 537 (emphasis added).'
[3] The designation report was presented at the hearing by Margot Ammidown, Acting Director of Dade County's Historic Preservation Division. Ms. Ammidown described the calls and letters which her division received from the neighbors requesting the historic designation of Parrot Jungle. She testified that Parrot Jungle was the 98th property to be designated as a Dade County historic site and that Parrot Jungle had not been considered for designation prior to the calls from the neighborhood. Ms. Ammidown explained that the designation would affect approximately 12 acres of the Parrot Jungle property. She testified that the designation would not be limited to individual buildings but would encompass everything within that acreage, including buildings and additions which were less than 50 years old. Ms. Ammidown testified that even structures such as maintenance sheds, which she described as "non-contributing" and not "aesthetically important," were included in the designation. She testified that the property owner could not demolish such "non-contributing" structures without first obtaining approval from the Board. The designation also included all improvements and landscaping, the vast majority of which are less than 50 years old. When asked to explain how the 12-acre site satisfied the "exceptional importance" standard set forth in the Ordinance, Ms. Ammidown acknowledged that the term is not defined in the Ordinance, that it is not contained in the regulations, that it is a subjective standard and that it is subject to a case-by-case determination.
[4] Wherein the following is found:

"Although the Davis view is an entirely reasonable one as demonstrated by its adoption in the federal courts and a minority of state jurisdictions, nonetheless, it clearly has not been the view in Florida. Should this court, then, accept the invitation of appellants to abandon the doctrine of nondelegation of legislative power which is not only firmly embedded in our law, but which has been so continuously and recently applied? We believe stare decisis and reason dictate that we not".
Id. at 924 (Citations omitted).