937 So.2d 1239 (2006)
ATLANTIC SHORES RESORT, LLC, Petitioner,
v.
507 SOUTH STREET CORPORATION and City of Key West, Respondents.
No. 3D06-245.
District Court of Appeal of Florida, Third District.
September 27, 2006.
*1241 Morgan & Hendrick, Key West, and James T. Hendrick, for Petitioner.
Lee Robert Rohe, Tallahassee; Johnson, Anselmo, Murdoch, Burke, Piper & McDuff, Fort Lauderdale, and Michael Burke and Cindy A. Williams, for Respondents.
Before SHEPHERD, SUAREZ and ROTHENBERG, JJ.
ROTHENBERG, Judge.
The petitioner, Atlantic Shores Resort, LLC ("the Developer"), petitions for a writ of certiorari, seeking to quash a decision of the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County ("Circuit Court"). We grant the petition and quash the Circuit Court's decision granting certiorari, as the Circuit Court departed from the essential requirements of law by considering issues barred by collateral estoppel.
The Developer seeks to redevelop a hotel property located in the Historic District of the City of Key West. 507 South Street Corporation ("the Objector") opposes the redevelopment. As the property in question is located in the Historic District of the City of Key West, it is subject to a particular regulatory structure, and governed by the Historic Architectural Review Commission ("HARC"). See City of Key West, Fla., Charter § 1.06(a);[1] City of Key West, Fla., Code of Ordinances § 90-126.[2] In order to erect a new structure in a historic district, a developer must first obtain a certificate of appropriateness from HARC. See City of Key West, Fla., Code of Ordinances § 102-152. HARC evaluates applications for certificates of appropriateness based upon guidelines that it issues concerning *1242 factors including design, scale, massing, and appearance. See City of Key West, Fla., Code of Ordinances § 102-155(a). One of the guidelines that HARC issued for new construction in the historic district is that a building's height may not exceed 2.5 stories. See City of Key West Historic Architectural Guidelines at 38. HARC's decisions regarding certificates of appropriateness are final and such decisions may be appealed to a special master. See City of Key West, Fla., Code of Ordinances § 90-428; City of Key West, Fla., Charter § 1.06(b). The special master's decision, in turn, is reviewable by the circuit court. See City of Key West, Fla., Code of Ordinances § 90-434.
As the property the Developer wishes to redevelop is located in the Historic District of the City of Key West, the Developer applied for a certificate of appropriateness from HARC. The Objector, however, sought to block the redevelopment, arguing that because the redevelopment plan calls for one of the buildings to be elevated, the redevelopment plan violates HARC guidelines limiting building height to 2.5 stories. Specifically, the Objector asserts that the open space beneath the building constitutes a story, and if the property is constructed as designed, that particular building would be 3.5 stories, and thus, violate the 2.5 story height restriction. The Developer's position is that many of the buildings in Key West are required to be elevated for flood safety, the open space beneath the building is not a story, the building in question is only 2.5 stories, and thus, the redevelopment plan is in compliance with the applicable HARC guidelines. HARC found in favor of the Developer and issued a certificate of appropriateness. The Objector unsuccessfully appealed the issuance of the certificate to the special master, based upon the same arguments it had made to HARC, that the redevelopment plan violates the 2.5 story guideline because the open space beneath the building is a story. Instead of appealing the decision of the special master to the Circuit Court as provided in section 90-434 of the Key West Code of Ordinances, the Objector waited until the Developer presented its redevelopment plan to the City Commission, once again raising the same objections it had made to HARC and the special master: that the building exceeded the 2.5 story limitation because the open space beneath the building should be considered a story. The City Commission was equally unpersuaded by the Objector's arguments and passed a resolution approving the proposed plan.
The Objector filed a petition for writ of certiorari with the Circuit Court, challenging the City Commission's resolution, arguing that the redevelopment plan violated the 2.5 story limitation because the open space beneath one of the buildings should be considered a story. The Developer, however, claimed that the Objector's arguments were barred by res judicata and/or collateral estoppel; the open space beneath the building is not a story; and the redevelopment plan does not violate the 2.5 story limitation. The Circuit Court initially denied the petition for writ of certiorari, but after a motion for rehearing, granted the writ and quashed the City Commission's resolution approving the redevelopment plan. The Circuit Court found that the issues before it were not precluded by res judicata or collateral estoppel, and that the redevelopment plan violates the 2.5 story limitation. The Developer now seeks quashal of the writ of certiorari granted by the Circuit Court.
As the petition before this court seeks quashal of a writ of certiorari issued by the Circuit Court, our review is limited to determining whether the Circuit Court afforded procedural due process and applied *1243 the correct law, or in other words, whether it departed from the essential requirements of the law. Miami-Dade County v. Omnipoint Holdings, Inc., 863 So.2d 195, 199 (Fla.2003); Peachtree Cas. Ins. Co. v. Prof'l Massage Servs., Inc., 923 So.2d 548, 550 (Fla. 1st DCA 2006); Ferrara v. Cmty. Dev., Ltd., 917 So.2d 907, 908 (Fla. 3d DCA 2005). The Developer claims the Circuit Court departed from the essential requirements of the law by considering issues barred by res judicata and/or collateral estoppel and by refusing to defer to HARC's interpretation of its own 2.5 story guideline. We agree.
Collateral estoppel precludes consideration of an issue when the identical issue has previously been fully litigated and determined between the same parties in a contest that resulted in a final decision by a court of competent jurisdiction. State v. McBride, 848 So.2d 287, 290-91 (Fla. 2003); Husky Indus., Inc. v. Griffith, 422 So.2d 996, 999 (Fla. 5th DCA 1982)(explaining that when its elements are met, collateral estoppel bars the consideration of issues that were actually adjudicated in a prior litigation).[3] The Objector claims that while the height restriction was previously raised, it was not raised in "previous litigation." He also argues that the special master's order was not a final decision, and that the special master is not a court of competent jurisdiction.
In determining whether the claims raised by the Objector in its petition before the Circuit Court were previously litigated, one must understand the City of Key West's regulatory system. As previously stated, before property located within the City of Key West's Historic District may be redeveloped, a developer must obtain a certificate of appropriateness from HARC. Any objections to HARC's issuance of a certificate must be appealed to the special master and then to the Circuit Court sitting in its appellate capacity. The Commission cannot issue a certificate and may only approve a plan if a certificate is issued by HARC. The Objector *1244 argues that the hearing before HARC, the appeal before the special master, the City Commission hearings, and the appeal to the Circuit Court were a continuation of a single case and, thus, one litigation. The Developer argues that the issuance of the certificate of appropriateness by HARC and the special master's review of that issuance are separate and distinct from the City Commission's approval of the Developer's redevelopment plan and the Circuit Court's review of that approval.
We agree with the Developer that the litigation concerning the certificate of appropriateness issued by HARC and the approval by the special master are separate from the litigation concerning the redevelopment plan approved by the City Commission and reviewed by writ of certiorari to the Circuit Court. Because the Objector has raised and has litigated the height restriction claim in its objection to the issuance of the certificate of appropriateness and subsequent appeal to the special master, its arguments before the Commission are, in fact, arguments previously litigated and satisfy the "previous litigation" requirement of collateral estoppel.
We also find the Objector's argument, that the special master's affirmance of HARC's issuance of the certificate of appropriateness was not a final decision, equally unpersuasive. The Objector claims that the findings of the special master on appeal was not a final order because the City Commission had not yet approved the redevelopment plan. While the City Commission may approve, modify, or reject a redevelopment plan, it lacks the power to review or modify a certificate of appropriateness issued by HARC and approved by a special master, or to analyze whether a redevelopment plan complies with HARC guidelines as it has conveyed that power to HARC. Thus, the special master's decision was not subject to the decision of the City Commission, and constitutes a final decision. The City of Key West Code of Ordinances makes it clear that HARC's decision as to a certificate of appropriateness is a final decision, subject to review only by the special master and then by the circuit court. See City of Key West, Fla., Code of Ordinances § 90-428; City of Key West, Fla., Code of Ordinances § 90-434; City of Key West, Fla., Charter § 1.06(b). As the special master affirmed the issuance of the certificate of appropriateness and the Objector did not appeal that decision to the Circuit Court, the decision regarding the certificate of appropriateness was final. Furthermore, as the City Commission is required to ensure that a redevelopment plan complies with historic structure design guidelines by ascertaining whether the developer has obtained a certificate of appropriateness, the issuance of a certificate of appropriateness is a condition precedent to obtaining the approval of a redevelopment plan from the City Commission. Accordingly, the decision regarding the certificate of appropriateness must necessarily be final prior to the City Commission approving a site plan.
The Objector's final argument against collateral estoppel is that the appeal to the special master was not an appeal to a "court of competent jurisdiction." We find no merit to this argument as quasi-judicial entities, as is the special master in the instant case, are considered "courts of competent jurisdiction" for the purposes of collateral estoppel. See Paresky v. Miami-Dade County Bd. of County Comm'rs, 893 So.2d 664, 666 (Fla. 3d DCA 2005); City of Tampa v. Lewis, 488 So.2d 860, 862 (Fla. 2d DCA 1986); U.S. Fid. Guar. Co. v. Odoms, 444 So.2d 78, 80 (Fla. 5th DCA 1984).
As all of the elements of collateral estoppel were met and the issue of whether the *1245 redevelopment plan violates the 2.5 story limitation set forth in the HARC guidelines was previously fully litigated and determined between the Developer and the Objector, resulting in a final decision by the special master, which was not appealed, the Objector is collaterally estopped from relitigating the same issue in the appeal it took after its unsuccessful attempt to block the redevelopment plan before the City Commission. Because the Objector was collaterally estopped from relitigating the height restriction, we conclude that the Circuit Court departed from the essential requirements of the law when it considered the issue and granted the Objector's petition. Accordingly, we grant the Developer's petition for writ of certiorari and quash the decision of the Circuit Court.
We also find that the Circuit Court, acting in its appellate capacity, departed from the essential requirements of the law when it relied on an incorrect standard of review regarding the height restriction. As noted previously, HARC issues guidelines which it utilizes to evaluate whether to grant certificates of appropriateness. See City of Key West, Fla., Code of Ordinances § 102-155(a). One of the guidelines issued by HARC is that a newly constructed building in the historic district may not exceed 2.5 stories. See City of Key West Historic Architectural Guidelines at page 38, paragraph 2. In the instant case, HARC determined that the redevelopment plan did not violate the 2.5 story limitation because it found that the open space beneath the building in question did not constitute a story.
An agency's interpretation of the guidelines that it is charged with administrating is entitled to judicial deference, and should not be overturned as long as the interpretation is in the range of permissible interpretations. See Paloumbis v. City of Miami Beach, 840 So.2d 297, 298-99 (Fla. 3d DCA 2003)(explaining that "administrative interpretation is entitled to judicial deference as long as it is within the range of possible permissible interpretations")(footnote omitted); Bd. of Trustees of the Internal Improvement Trust Fund v. Levy, 656 So.2d 1359, 1363 (Fla. 1st DCA 1995)("If an agency's interpretation of its governing statutes is one of several permissible interpretations, it must be upheld, despite the existence of reasonable alternatives."); Metro. Dade County v. P.J. Birds, Inc., 654 So.2d 170, 175 (Fla. 3d DCA 1995)(explaining that a "reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial competent evidence")(quoting Pub. Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 988 (Fla.1985)).
HARC's determination that the building in question does not violate its 2.5 story limitation was a reasonable interpretation, within the range of permissible interpretations of the limitation, and thus, should not have been overturned by the Circuit Court. HARC's interpretation was permissible because whether or not the redevelopment project in the instant case violates the 2.5 story guideline depends upon the definition of the word "story," and it was reasonable for HARC to determine that the open space beneath the building in question is not a "story." This is because the guidelines set forth by HARC define "story," in pertinent part, as "[t]hat portion of a building included between the upper surface of any floor and the upper surface of the floor next above...." City of Key West Historic Architectural Guidelines at 74. Section 34-26 of the City of Key West Code of Ordinances, in turn, defines "floor" as "the top surface of an enclosed area in a building," and provides *1246 that "[t]he term does not include the floor of a garage used solely for parking." Under the redevelopment plan in question, the area under the planned building is both unenclosed and an area used solely for parking vehicles. Therefore, it was reasonable for HARC to determine that the surface of the open space beneath the building does not fit within the definition of "floor." Once it determined that the surface of the open space beneath the building is not a "floor," it reasonably follows that the space between that surface and the floor above it is not a story. Under this interpretation, since the open space beneath the building is not a story, the building is only 2.5 stories high, and does not violate the 2.5 story limitation. Because this interpretation is reasonable, the Circuit Court erred in substituting its own interpretation of "story" for HARC's.
By failing to defer to HARC's reasonable interpretation of its own guidelines, the Circuit Court departed from the essential requirements of the law. Accordingly, even if we did not grant the Developer's petition for writ of certiorari based upon the collateral estoppel issue, we would grant it based upon the Circuit Court's failure to defer to HARC's interpretation of its own guidelines.
Petition granted; writ quashed.
NOTES
[1] Section 1.06 of the Charter provides that "[t]here shall be an Historic Architectural Review Commission whose duties shall be prescribed by ordinance."
[2] Section 90-126 of the Code provides:

The city commission finds that the preservation of the character and appearance of the historic preservation districts of the city, as well as buildings, structures, and properties listed in the local register of historic places and the National Register of Historic Places, and buildings, structures, archaeological sites, or districts classified as "contributing" or "contributing but altered" on the city historic preservation survey is a public purpose benefiting the educational, cultural, and economic welfare of the citizens of the city. The city commission further finds that this public purpose can be best achieved through a city agency having the authority and responsibility to review and regulate certain changes in such areas. The city commission hereby creates the historic architectural review commission (HARC), which shall use the power and authority conferred upon it by this Code to further such public purpose.
[3] Res judicata does not apply to the instant case. Res judicata applies only when there is "[a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction...." Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla.1984)(quoting Wade v. Clower, 94 Fla. 817, 114 So. 548 (1927))(emphasis added). "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." Albrecht v. State, 444 So.2d 8, 12 (Fla.1984), superseded on other grounds by statute. Here, the "cause of action" litigated before the City Commission and the Circuit Court was not the same as the "cause of action" litigated before HARC and the Special Master. This is because the City Commission evaluates a development plan based upon a completely different set of criteria than the criteria HARC considers in deciding whether or not to issue a certificate of appropriateness. As previously noted, HARC evaluates applications for certificates of appropriateness based upon guidelines that HARC itself issues. See City of Key West, Fla., Code of Ordinances § 102-155 (directing HARC to formulate and publish regulations to govern its evaluation of certificates of appropriateness). The City Commission, however, evaluates development plans based upon land development regulations and the comprehensive plan. See City of Key West, Fla., Code of Ordinances § 108-198 (requiring development plans to be reviewed by the city commission and providing that the commission shall approve or disapprove a development plan "based on specific development review criteria contained in the land development regulations and based on the intent of the land development regulations and the comprehensive plan"). As the criteria used by HARC to determine whether to issue a certificate of appropriateness and the criteria used by the City Commission to determine whether to approve a development plan analyze different facts, the causes of action are different. See Albrecht, 444 So.2d at 12.